Conway, Ch. J.
On March 25, 1954, at approximately 20 minutes after midnight, defendant and one James Compton, inmates of the Monroe County Penitentiary, escaped with the aid of two former inmates, who entered the prison, one of them armed with a revolver, overpowered and bound two guards, taped their mouths, threatened to blow out the “ guts ” of one of them if he caused any trouble and stole the automobile of one of the guards. Thereafter, defendant was apprehended and charged with conspiracy, escape and various felonies. Two trials were had in the County Court of Monroe County on the indictment since the first jury was unable to agree upon a verdict on certain of the counts. The final outcome was that defendant was convicted of the crimes of (a) conspiracy to commit the crimes of (i) aiding escape, (ii) robbery in the first degree, and (iii) grand larceny in the first degree from the person of property over $500 in value; (b) escape from prison; (c) robbery in the first degree, and (d) grand larceny in the first degree.
On appeal, the Appellate Division, Fourth Department, unanimously (1) reversed the judgment of conviction (the two separate verdicts of guilt on the two trials culminated in one judgment of conviction), on the law, and (2) ordered a new trial. In its opinion that court declared: ‘ ‘ After reviewing the records, we are satisfied that the evidence fully supports the conviction, and if the trials had been free from serious and prejudicial error, we would affirm without hesitation. ’ ’ The Appellate Division went on to hold that prejudicial error had been committed in that defendant had been handcuffed to a deputy sheriff throughout both trials over the objection of defense counsel.
At the outset we must state the scope of our review on this appeal. All that the order of the Appellate Division states is that the judgment of conviction “ is reversed on the law Section 543-a of the Code of Criminal Procedure provides that whenever an intermediate appellate court shall reverse or modify a judgment or order rendered in the court of first instance, its order shall state whether its determination is upon the law, or upon the facts, or upon both the law and the facts, and if the determination is stated to be upon the law alone — as *274 here — the order shall also state whether the findings of fact below have been affirmed or have not been considered. If the order of the intermediate appellate court does not comply with the provisions of section 543-a, it must be presumed, for the purpose of an appeal to our court, that the questions of fact were not considered by such court. Here, the order of the Appellate Division does not state whether the findings of fact — which term has been held to encompass certain discretionary matter decided by the court of first instance (see Cohen and Karger, Powers of the New York Court of Appeals, pp. 587-593) • — ■ have been affirmed or considered. However, the opinion of the Appellate Division does state, as we mentioned above, that the Appellate Division was “ satisfied that the evidence fully supports the conviction ”. Since the opinion is referred to in the order, it may supplement the order by supplying a fact required to be stated in the order. In this case, then, we may take cognizance of the fact that the Appellate Division affirmed those findings of fact implicit in the jurys’ verdicts of guilt (Code Crim. Pro., § 543-a, subd. 3). That still leaves open the question of the discretionary matters decided by the trial court, more particularly, the issue of the trial court’s exercise of discretion in refusing to order the handcuffs removed during defendant’s two trials. It is with respect to the matter of handcuffing that the Appellate Division disagreed with the trial court.
Had it so chosen, the Appellate Division could have reversed the judgment of conviction in the exercise of discretion, that is, the Appellate Division could have exercised the discretionary power confided to it to order a new trial in the interests of justice (see Code Crim. Pro., § 527). Phrased differently, the Appellate Division could have substituted its discretion or judgment, with respect to the handcuffing of defendant, for that of the trial court. Had the Appellate Division done so, we, in this court, would have been unable to review its determination for, a reversal in the interests of justice is a reversal predicated upon the facts and we are powerless to review such a determination (see Cohen and Karger, Powers of the New York Court of Appeals, p. 754). Instead, the Appellate Division, as its order declares, “ reversed on the law ”. Accordingly, we must look at the opinion through the eyes of the order and commence our consideration of the case with the proposition that the Appellate Division did not substitute its discretion for that *275 of the trial court, hut, rather, concluded that the trial court was guilty of a prejudicial abuse of discretion as a matter of law.
We address ourselves to that narrow issue.
Section 10 of the Code of Criminal Procedure provides, in part, that a person charged with crime cannot “be subjected, before conviction, to any more restraint than is necessary for his detention to answer the charge.” As the Appellate Division said, this statute is declaratory of the common law. The common law is summed up in Corpus Juris Secundum (Yol. 23, Criminal Law, § 977, pp. 313-314) as follows: “During the trial accused should be free from shackles, except in so far as the trial court, in its sound discretion, deems them necessary to prevent the escape of accused or his forcible release, to restrain him from doing violence to others, or from injuring himself, or to prevent such misconduct as would obstruct the work of the court * * *. If accused is shackled without such necessity, it is reversible error, unless it is clear that no prejudice in the minds of the jury was caused thereby.”
At the time of the escape, Mendola still had seven months to serve in the Monroe County Penitentiary. When he was apprehended following the escape he stated, in the presence of the deputy sheriff and the assistant district attorney who tried the escape case against him, that he “ really wanted out ”; that he “ was always trying different guys, if I could get a saw ” and that he would have escaped even if he “ had one day to go ”.
Thus, the Sheriff and District Attorney were confronted, in the person of Mendola, with the picture of a man so desperate for freedom that he was forever looking for a means of escape and was prepared to admit that he would have availed himself of an opportunity to escape if he had had but one day left to serve on his sentence. In his desperate state he allied himself with two former inmates who put into effect an escape plan, the boldness of which cannot be overlooked. Although they were former inmates of the prison, these two men made no attempt to disguise or hide their facial features while aiding Mendola and Compton to escape. At about 12:20 a.m. they knocked at the front door of the penitentiary. They advised the guard who admitted them that they had a package for James Compton, one of the inmates. The guard took them to the office at which time one of them drew a gun. They then bound the guard and taped his mouth. Thereafter, one of them went *276 into the cell block and overpowered a second guard, threatening to blow out his ‘ ‘ guts ” if he caused any trouble. Finally, they escaped with an automobile owned by one of the two guards.
It was the responsibility of the sheriff’s office to “ safely keep ” Mendola in custody throughout the course of the trials (see Correction Law, § 500-c). Certainly, the deputy sheriff here, possessed of the information set forth above which led to Mendola’s escape, was justified in concluding that more than usual measures had to be taken to prevent another escape by Mendola during the course of the trials. He was not obliged to wait until Mendola had actually undertaken to escape from his custody or had confessed to him that he was planning to do so, before resorting to more than customary precautions. The need for such precautions was established by Mendola’s confession as to his frantic desire to escape from custody coupled with the fact that he had succeeded in doing so in the manner related earlier. The Sheriff determined that, to prevent another escape or attempted escape by Mendola, it was advisable and necessary that Mendola be handcuffed to a deputy sheriff. In our judgment, it cannot be said, on the record here presented, that the precaution thus taken by the Sheriff was, as a matter of law, excessive or constituted more restraint than was necessary for Mendola’s detention to answer the charge against him. That being so, it follows that the trial court cannot be said to have been guilty of a prejudicial abuse of discretion as a matter of law in having permitted the Sheriff to take the precaution which he did.
The Appellate Division was of the view that the trial court improperly relinquished to the Sheriff its authority and control over the defendant in the courtroom by accepting, without question, the Sheriff’s decision to handcuff Mendola. It is suggested by the Appellate Division that the trial court should have taken testimony so that its reasons for upholding the Sheriff’s decision would be made to appear upon the record.
It is true, as the Appellate Division has said, that in presiding over a trial the trial judge has the function and duty to control all proceedings during the trial and that the duty thus imposed is an affirmative one to be exercised within the limits of sound discretion in order that there may be no bias or prejudice against the accused or a denial to him of a fair trial. Accordingly, while the Sheriff, in the discharge of his duties, *277 has the initial responsibility of determining whether an accused should be handcuffed during a trial, the trial judge must, in presiding over the trial, decide the question for himself. It may be that in determining whether handcuffs are reasonably necessary in a given case, the better practice would be for the trial judge to take testimony as to the necessity for the handcuffs and state for the record his reasons for confirming the decision of the Sheriff in that respect. Such procedure would undoubtedly facilitate a review by the appellate courts of the trial court’s determination. However that may be, the fact that the trial court has not followed what might be considered the “ better practice ” before approving the Sheriff’s action, cannot serve to justify the ordering of a new trial upon the ground that the trial court has prejudicially abused its discretion as a matter of law where, as here, it appears from the record itself that the Sheriff had reasonable cause for handcuffing the accused. The fact that we are unable to determine from the record how detailed a knowledge of the facts of the escape and of defendant’s compulsive urge to escape from custody the trial court possessed, is not dispositive. "What is dispositive is the fact that the record reveals sufficient evidence to justify the trial court’s refusal to order the handcuffs removed from Mendola.
Defendant maintains that his right to confer with counsel was abridged by his having been handcuffed to a deputy sheriff. However, on neither trial did defendant object to the handcuffs for that reason. His claim was that the presence of the handcuffs would be prejudicial to him before the jury.
We note that at one point in its opinion the Appellate Division wrote: ‘ ‘ If for some reason not apparent in the record, unusual precautions were necessary, they probably could have been taken in a less sensational manner.”' While the Appellate Division might properly make such a statement if it were reversing in the interests of justice, i.e., substituting its discretion for that of the trial court, where it reverses as a matter of law — as here — such a statement is not apposite, for in determining whether a trial judge has abused his discretion as a matter of law, the question is not whether the course pursued by the trial judge was the test course to take, but whether it was a rational or justifiable course to take.
For the foregoing reasons we conclude that the Appellate Division erred in holding that the Trial Judge was guilty of a *278 prejudicial abuse of discretion as a matter of law and that the order of the Appellate Division directing’ a new trial as a matter of law must be reversed.
Section 543-b of the Code of Criminal Procedure provides, in part, that: ‘ ‘ The court of appeals, upon reversing * * * a determination of one of the intermediate appellate courts referred to in section five hundred seventeen, where it * * * must be presumed, as required by section five hundred forty-three-a, that the questions of fact were not considered by such intermediate appellate court, shall not render a determination based upon the findings of fact made in the court of original instance, but shall remit the case to the intermediate appellate court for determination upon the questions of fact raised in that court.” Since we must presume, as we have indicated {supra, pp. 276-277) that the Appellate Division did not exercise its discretion in reversing here, we must remit the case to the Appellate Division for the purpose of determining whether or not a new trial should be ordered in the interests of justice (Code Grim. Pro., § 527).
The order of the Appellate Division should be reversed and the matter remitted to that court for the purpose of determining whether or not a new trial should be ordered in the interests of justice.
Desmond, Dye, Fuld, Froessel, Van Voorhis and Burke, JJ., concur.
Order reversed, etc.