■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BRUCE M. GREINER, Appellant.—Mikoll, J. Appeal from a judgment of the County Court of Greene County (Fromer, J.), rendered April 14, 1988, upon a verdict convicting defendant of the crimes of attempted assault in the first degree, criminal possession of a weapon in the second degree, attempted aggravated assault upon a police officer, attempted murder in the second degree and resisting arrest.

While patrolling alone in his vehicle in the Town of Cairo, Greene County, Raymond Miller, a Deputy Sheriff, received a radio message at about 7:00 A.M. on May 9, 1987 to "check out" a suspicious person walking westerly on County Road 23B. Miller was also informed that the person was considered armed and dangerous. As Miller approached the described

---

person from the rear, the subject turned to look at him and Miller recognized the subject as defendant, whom he knew as an inmate at the Greene County Jail and for whom there was an outstanding parole warrant for his arrest. Miller stopped his vehicle and approached defendant on foot with his revolver drawn. Miller directed defendant to "lie on the ground with his arms and legs stretched out". Instead of complying with this order, defendant took a few steps away from him. Miller again ordered defendant to lie on the ground but, in reply, defendant raised his arms about shoulder height. Miller walked to the back of defendant and pat searched defendant's left side with his left hand. Finding nothing, Miller reholstered his revolver and pat searched defendant's right side. While Miller was withdrawing his handcuffs, defendant turned and yelled "no". Miller grabbed defendant by the top of his jacket and pulled him to the ground and a scuffle began.

During the struggle, Miller held defendant in a headlock and shouted to two men that he had seen standing about 300 to 400 feet away. Miller then saw that defendant had a large bladed kitchen knife in his left hand and twisted it from him. The knife skidded across the tavern parking lot where they were. Miller felt defendant tugging at his service revolver, which defendant had freed from its holster. When Miller felt his revolver come free, defendant was draped over the top of him. Miller kicked up with his knees and hands; as a result defendant landed on his back on the ground with Miller also landing on his back on top of defendant. At that point the revolver was in defendant's hand in the air on Miller's side. Miller then reached up or over, grabbing the revolver with both hands and pulling it into his chest. Miller had gripped the revolver with his pinky finger behind the hammer and his other three fingers over the top of it, gripping the cylinder. This would not allow the revolver to fire. It was then that he felt defendant exerting pressure on the trigger. He felt pressure being exerted on his pinky finger by the hammer coming back. He also felt the cylinder turn. Grabbing the revolver tighter Miller then said to himself that defendant was out to shoot him. On feeling the pressure on the trigger, Miller rolled over onto the ground with the revolver pinned to his chest and defendant on top of him. Defendant's right hand was still on the revolver, his fingers on the trigger. The two men then came over and pulled defendant off of him. Miller got up, reholstered his revolver, retrieved his handcuffs and placed them on defendant.

Defendant was charged in a seven-count indictment with

two counts of attempted assault in the first degree, criminal possession of a weapon in the second and fourth degrees, attempted aggravated assault upon a police officer, attempted murder in the second degree and resisting arrest. At the trial, the testimony of the two rescuers was not at material variance from Miller's description of the events. An expert witness also testified to the firing mechanism of the revolver, confirming Miller's testimony in that regard.

After trial defendant was convicted of all but two of the charges against him, attempted assault in the first degree (involving the knife) and criminal possession of a weapon in the fourth degree (involving the knife). Defendant was sentenced as a persistent violent felony offender to three concurrent indeterminate prison terms of 25 years to life on his attempted murder, attempted aggravated assault upon a police officer and criminal possession of a weapon in the second degree convictions, and to a concurrent term of one year on his resisting arrest conviction. This appeal ensued.

Defendant contends that there was insufficient evidence to sustain the convictions of attempted assault in the first degree, attempted aggravated assault upon a police officer and attempted murder in the second degree. He also argues that it was improper for County Court to decline to charge the jury on circumstantial evidence, that it was error to shackle defendant in the presence of the jurors, both during the jury selection process and at trial, and that it was incorrect to sentence him as a persistent violent felony offender.

Despite defendant's contentions to the contrary, the record contains sufficient evidence to support his convictions for attempted assault in the first degree, attempted aggravated assault upon a police officer and attempted murder in the second degree. However, as defendant was convicted of, but not sentenced for, the crime of attempted assault in the first degree (involving the gun), the matter must be remitted to County Court for imposition of sentence as to such conviction.

Penal Law § 125.25 (1) defines murder in the second degree as the causing of the death of another person with the intent to cause such death. A person is guilty of an attempt to commit a crime "when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime" (Penal Law § 110.00). Here, there was evidence to support the finding that defendant had the requisite specific intent to cause Miller's death and acted to carry out that intent (see, *People v Bracey*, 41 NY2d 296; *People v Bray*, 99 AD2d 470). In reviewing the sufficiency of the evidence, we

must apply the rule that the trial evidence is to be viewed in the light most favorable to the People *(see, People v Perez,* 64 NY2d 868, 869; *People v Contes,* 60 NY2d 620, 621). The record should be considered in its entirety and the fact that competing inferences may be drawn from the evidence does not preclude the jury from making a choice between those inferences *(see, People v Castillo,* 47 NY2d 270, 277; *People v Dobranski,* 89 AD2d 250, 252).

Miller's testimony established that defendant, after having been apprehended at gunpoint for a parole violation and after a partial pat search had been made, shouted "no" when Miller drew his handcuffs for the purpose of handcuffing defendant. A struggle between the two began during which defendant, in attempting to avoid custody, grabbed Miller's service revolver. Miller was able to place both his hands on the revolver being held by defendant and draw it against his chest. Defendant attempted to fire the weapon at this point, evidenced by the pressure Miller felt against his pinky finger, which prevented the hammer of the revolver from going back in the process of firing. The jury could rationally conclude on these facts that defendant intended to kill Miller in order to avoid arrest and to effectuate his escape. It is a fair inference that, but for Miller's intervention, defendant would have fired the gun at close range into Miller's body, killing him. One can reasonably infer that when defendant pulled on the trigger of the revolver, Miller was his target and that defendant knew a shot to Miller's chest area could result in his death. Thus, there was proof from which the jury could conclude beyond a reasonable doubt that defendant, by his actions, intended to cause Miller's death. This evidence also sustains the jury's finding that defendant intended to cause serious physical injury to Miller by means of a deadly weapon, namely, Miller's service revolver. The convictions for attempted murder in the second degree and attempted assault in the first degree therefore should not be disturbed. There is also sufficient evidence to sustain the jury's finding that defendant was guilty beyond a reasonable doubt of committing the crime of attempted aggravated assault upon a police officer engaged in his duties of which defendant was aware *(see, People v Barnes,* 50 NY2d 375, 381).

Defendant's next contention, that County Court erroneously failed to charge the jury regarding the "moral certainty standard" to be applied when circumstantial evidence is considered, is without merit. There is no necessity to give such charge when, as here, the evidence consists of both direct and

circumstantial evidence *(see, People v Sanchez,* 61 NY2d 1022; *People v Barnes, supra).*

We also find unpersuasive defendant's argument that it was error for County Court to restrain defendant with leg shackles during voir dire and the trial. A criminal defendant may not be shackled in the presence of the jury unless there is a rational and justifiable basis for the restraint *(People v Mendola,* 2 NY2d 270). A defendant's right to be free of shackles, however, is not absolute, but may be limited when necessary for reasons of security, to prevent disruption of the trial, harm to those in the courtroom, escape or release of the accused, or the commission of other crimes *(see, People v Mendola, supra; cf., Holbrook v Flynn,* 475 US 560; *Illinois v Allen,* 397 US 337). Where shackling is permitted, a curative instruction must be given to the jury to the effect that it should disregard the shackling and that it has no bearing on the guilt or innocence of the defendant *(People v Hart,* 112 AD2d 471, 472; *see also, People v Dawson,* 125 AD2d 860). This instruction was given in the case at bar.

The determination to shackle is a matter within the trial court's discretion and, in this case, we find no abuse of that discretion. The record indicates that County Court acted in response to the request of the Sheriff, who had informed the court of instances where defendant had made numerous threats and statements in the hearing of others indicating his desire to do violence to law enforcement personnel. These were made during his confinement and immediately prior to trial. Defendant was in court to stand trial for the recent crimes of attempted murder and assault involving the grabbing of the arresting Deputy's service revolver and the use of the weapon against the Deputy to effect an escape. These circumstances highlight and intensify the threats and statements of harm reported to the court. This defendant had already demonstrated to the court his capacity and willingness to act suddenly, boldly and without fear of serious harm to himself and others to attempt an escape from custody. Defendant demonstrated by his past actions that his threats were not mere idle boasts. County Court indicated an awareness of defendant's threats and admonished that the court had authority to take "appropriate measures to secure" the safety of defendant's attendants as well as the people in the courtroom. The court further noted that it would be "prudent" to have defendant remain in leg shackles which "would inhibit his ability to move quickly". That another court may have reached a different conclusion based on the same facts and

circumstances than did County Court in regard to shackling does not justify a finding that the court abused its discretion in this matter of courtroom security *(see, People v La Boy,* 91 AD2d 1102, 1103).

Finally, defendant's assertion that County Court erroneously sentenced defendant as a persistent violent felony offender is without merit. Defendant was properly sentenced as such.

Judgment affirmed on defendant's conviction of the crimes of criminal possession of a weapon in the second degree, attempted aggravated assault upon a police officer, attempted murder in the second degree and resisting arrest, and matter remitted to the County Court of Greene County for imposition of sentence on defendant's conviction of the crime of attempted assault in the first degree. Mahoney, P. J., Kane, Mikoll, Yesawich, Jr., and Levine, JJ., concur.