OPINION OF THE COURT
Joseph Fisch, J.
Defendant, arrested under the name of Reuben Caíate, but who maintains that he properly identified himself to the police under his true name, Reuben Escalante, moves to dismiss the indictment, pursuant to CPL 190.50, 210.30 and 210.35, alleg *191 ing that the People impinged on his right to testify in the Grand Jury. For the reasons that follow, defendant’s motion is granted, with leave to re-present to a different Grand Jury panel, if so advised.
FINDINGS OF FACTS
Defendant was indicted by a true bill filed on June 19, 1998, charging him with criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree.
The indictment was based on a presentation made on June 4 through June 9,1998, and the court has reviewed the transcript of such Grand Jury proceedings. The People do not dispute defendant’s factual contentions that throughout his appearance before the Grand Jury he was shackled at the hands and feet. The District Attorney’s Grand Jury coordinator, as well as the court officers who accompanied the defendant from the holding area, informed defense counsel that because of the defendant’s status as a “red card”,* so identified by the Department of Correction (Correction), he would remain shackled when he appeared to testify before the Grand Jury. Defense counsel was also advised that this procedure was not negotiable. Accordingly, in order for the defendant to exercise his right to appear before the Grand Jury and give testimony on his own behalf, the defendant had no alternative but to appear before the Grand Jury, so shackled.
The defendant, in his Grand Jury testimony, denied that he was involved in the drug transaction alleged by the People. He alleged that he was innocent of any wrongdoing and was standing in front of a barber shop when arrested. The prosecutor sought to disparage the defendant’s credibility, and his entire charge to the Grand Jury centered on the critical role that it must play in weighing “his credibility, i.e., his believability as a witness.” At no time did the prosecutor give curative instructions regarding the fact that defendant was heavily shackled.
THE LAW
Although not cited by the parties, the leading case in New York is People v Felder (201 AD2d 884, 885 [4th Dept], lv denied 83 NY2d 871 [1994]). In Felder (at 885), the Appellate Division stated: “We agree with defendant that it was error to *192 require him to appear before the Grand Jury in handcuffs. It is well settled that a criminal defendant may not be physically restrained in the presence of a jury unless there is a rational basis, articulated on the record, for the restraint (see, People ex rel. Washington v Johnson, 79 NY2d 934, 935; People v Mendola, 2 NY2d 270, 275) or ‘it is clear that the jury was not prejudiced thereby’ (People v Thomas, 125 AD2d 873, 874; see, People v Mendola, supra, at 275). The record contains no facts to justify the restraint of defendant with handcuffs.” (See generally, People v Greiner, 156 AD2d 813, 817 [3d Dept 1989], lv denied 75 NY2d 919 [1990]; State v Schroeder, 62 Ore App 331, 336-339, 661 P2d 111, 116-117, review denied 295 Ore 161, 668 P2d 380 [1983]; but see, People v Hilliard, 142 AD2d 885, 886-887 [3d Dept 1988] [not error for defendant testifying before Grand Jury to be shacked], revd on other grounds 73 NY2d 584 [1989].)
In Felder (supra), the Court concluded that reversal was not required because the prosecutor twice gave cautionary instructions to the Grand Jury, dispelling any prejudice. In the present case, the prosecutor failed to give any curative instruction regarding the shackles, thereby allowing the Grand Jury to draw the worst inferences about defendant in a case where the issue of credibility between defendant and the police was critical.
On this motion, the prosecutor argues that because Correction labeled the defendant with a “red card”, identifying him as a prior weapon possessor, there was no choice but to require defendant to be shackled. This is not true. Although this court is familiar with the “red card” identification issue (see, this court’s opn in People ex rel. Borrell v Warden, indictment No. 1521-97, July 13, 1998), there is no evidence that defendant carried a weapon to any court with regard to any matter, or made any menacing threats to court personnel or to the grand jurors. Although Correction is wisely given considerable latitude in its operation of the penal environment, it cannot dictate how our courts are to be run where considerations of justice, fairness, and due process are paramount. Allowing a defendant to testify in shackles without, a satisfactory record establishing the intense security need for such restraints is unacceptable to our justice system.
By permitting defendant to be viewed by the grand jurors in his heavily shackled state, and making the issue of credibility the centerpiece of his charge, the prosecutor in effect impinged on the function of the Grand Jury to assess believability. The *193 prosecutor’s allegation that defense counsel made no objection is untenable. First, defense counsel’s role in the Grand Jury is limited. Second, the Grand Jury should serve as the “bulwark between innocent people and overzealous or misinformed prosecutors.” (People v Francis, 166 Misc 2d 476, 478 [Sup Ct, NY County 1995].) In this regard, the court serves a protective function, as explained in People v Latorre (162 Misc 2d 432, 434 [Crim Ct, Kings County 1994]): “The courts have a responsibility to prevent unfairness in Grand Jury proceedings and insure that the Grand Jury remain independent and not become an adjunct of the District Attorneys office.”
Accordingly, the indictment is dismissed with leave to represent to another Grand Jury, if so advised, and without the defendant being shackled or handcuffed.

 A “Red Card Identification” is a marking by Correction labeling a prisoner as an “Inmate Weapon Carrier”.