*Harry W. Asquith,* Town Solicitor, for complainant.

*Earl F. Pasbach,* for respondents.

231 A.2d 767.
THOMAS RICHARD KNOTT, JR. *vs.*
HAROLD V. LANGLOIS, *Warden.*

JULY 20, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. In this petition for a writ of habeas corpus the petitioner, now serving a sentence of life imprisonment in the custody of the respondent warden at the adult correctional institutions, contends that the family court's waiver of its jurisdiction over him was invalid and rendered null and void his subsequent trial and conviction in and sentence by the superior court.

## I

On January 26, 1963, at about 10:30 o'clock in the evening, petitioner, then aged 17 years and eight months, was apprehended and taken into custody by police officers of the city of Pawtucket for questioning in connection with two homicides, the first of which had been committed on December 22, 1961, in the city of East Providence in this state and the second in the town of South Attleboro in the Commonwealth of Massachusetts on January 25, 1963. He was detained overnight and on the following morning was turned over to the East Providence police who held him until January 28, 1963. On that day, having completed their investigation and obtained his confessions to both murders, the police brought him before the family court so that it might determine whether to waive its jurisdiction. After a brief hearing, a complete transcript of which accompanies this opinion as an appendix, it relinquished jurisdiction and ordered petitioner held for trial before an adult court.

Thereafter, on February 6, 1963, Knott was indicted by a grand jury in the superior court for first degree murder. He pleaded not guilty and not guilty by reason of insanity to that indictment. A psychiatric evaluation was ordered and upon it being found that he was not mentally competent to stand trial, he was held without bail and transferred to the criminal insane ward. Almost three years later, after another psychiatric evaluation, he was found competent to

stand trial. After again entering pleas of not guilty and not guilty by reason of insanity he went to trial before a jury on February 7, 1966. He was found guilty as charged and thereafter his motion for a new trial was denied. On April 14, 1966, he was sentenced to life imprisonment. Although a notice of intention to prosecute a bill of exceptions has been filed, the case has not yet come to this court on his exceptions.

## II

The substantial question is whether the waiver of jurisdiction by the family court was preceded by that kind of a "full investigation" which the legislature in its solicitude for children prescribed in G. L. 1956, §14-1-7[1], as amended by P. L. 1961, chap. 73, sec. 14, whenever a juvenile 16 years of age or older, is brought before the court charged with an offense which would, if he were an adult, render him subject to indictment.

The decision of whether to waive or not to waive is, in the language of *Kent* v. *United States,* 383 U. S. 541, 558, 86 S. Ct. 1045, 1056 (1966), " 'critically important' " to any juvenile who comes before a juvenile court accused of a felony. Conceptually, a relinquishment of jurisdiction will remove him "* * * from the rehabilitative philosophy of the juvenile court to the regular criminal processes, where the notions of retribution and deterrence play an important

---

[1]The statute reads:

"If a child sixteen (16) years of age or older is charged with an offense which would render said person subject to indictment if he were an adult, a judge of the family court after full investigation, may waive jurisdiction and order such child held for trial under the regular procedure of the court which would have jurisdiction of such offense if committed by an adult."

role." 114 U. Pa. L. Rev. 1171 at 1172. "Criminal Offenders In The Juvenile Court: More Brickbats And Another Proposal." Realistically, it can spell the difference between a proceeding civil in nature with the possibility of detention in a juvenile institution for rehabilitative rather than retributive purposes for a term which cannot extend beyond his 21st birthday[2] and imprisonment as a criminal in an adult penal institution for a term which depending on the crime may be for as much as life.

In *Kent* v. *United States, supra,* the juvenile court in the District of Columbia had waived its jurisdiction over a juvenile accused of rape pursuant to a statute which, like ours, required a "full investigation" preliminarily to a decision on waiver. Perhaps because it was misled by the absence either of a statutory requirement for a hearing or of any legislatively established procedural standards or criteria for the conduct of such a hearing, if held, the juvenile court's cryptic order recited only that a "full investigation" had been made, that jurisdiction was waived and that Kent was to be held for trial before the United States district court. There was no hearing and the court neither gave any reasons for waiving nor made any findings.

Moreover, by inaction the juvenile court in effect both refused the request of Kent's counsel for access to his client's social service file, and denied sub silentio his motion for a hearing on the question of waiver notwithstanding the fact that it was supported by an affidavit of a psychiatrist certifying that Kent was "a victim of severe psychopathology" and supported as well by an offer of proof that he

---

[2]Section 14-1-6 provides that:

"When jurisdiction shall have been obtained by the court in the case of any child, such child shall, except as herein otherwise specifically provided, continue under the jurisdiction of the court until he becomes twenty-one (21) years of age, unless discharged prior thereto * * *."

would be a suitable subject for rehabilitation if given adequate hospital treatment.

Although due process innuendoes and constitutional overtones are woven into the fabric of the *Kent* opinion, the court rested its decision, not on the constitution[3], but on the meaning and construction of the statutory directive that there be a "full investigation." That requirement, the court said at 557, *supra,* 86 S. Ct. at 1055, "* * * read in the context of constitutional principles relating to due process and the assistance of counsel * * *" requires, as a precedent to waiver: that the juvenile court afford the minor an opportunity for a hearing on the "critically important" decision of whether or not to waive; that in order to permit a child's counsel to function effectively it allow him access to his client's social service records; and that the decision of the court include a statement of the relevant facts as well as of the reasons or considerations motivating the determination. We subscribe to these requirements as being implicit in the legislative directive that there be a "full investigation," and we adopt them as the minimal essentials which must be observed by the family court in the conduct of waiver proceedings.

### III

We come now to the standards we will apply when we review waiver proceedings. Here, too, the court in *Kent* established guidelines. It said at 561, *supra,* 86 S. Ct. 1057:

> "Meaningful review requires that the reviewing court should review. It should not be remitted to assumptions. It must have before it a statement of the reasons motivating the waiver including, of course, a statement

---

[3] A year after *Kent,* in *Application of Gault,* 387 U. S. 1, 87 S. Ct. 1428 (1967), the court squarely faced the question of a juvenile's entitlement to constitutional protections and held that he is guaranteed the right to timely notice of the charges he will be forced to meet, to the assistance of retained or appointed counsel, to the privilege against self-incrimination, and to confront and cross-examine witnesses.

of the relevant facts. It may not 'assume' that there are adequate reasons, nor may it merely assume that 'full investigation' has been made. Accordingly, we hold that it is incumbent upon the Juvenile Court to accompany its waiver order with a statement of the reasons or considerations therefor. We do not read the statute as requiring that this statement must be formal or that it should necessarily include conventional findings of fact. But the statement should be sufficient to demonstrate that the statutory requirement of 'full investigation' has been met; and that the question has received the careful consideration of the Juvenile Court; and it must set forth the basis for the order with sufficient specificity to permit meaningful review."

Tested by these standards, and they are the standards we will follow on review, the decision in this case cannot stand. It may well be that the considerations underlying the family court's determination to waive were the minor's past record,[4] which presumably he considered before announcing his decision, or his concern that the public's need for protection demanded that a confessed murderer be confined beyond the time when the family court's jurisdiction over him would terminate by reason of his reaching the age of

---

[4]Subsequent to the certification to us of the family court record which included the transcript of the waiver proceedings and a police report narrating the story of Knott's apprehension and his confessions to both murders, we granted respondent's motion that the record be supplemented by the "* * * complete records and files concerning the waiver hearing * * *." The additional files thereafter certified disclose a prior juvenile court record, an admission to a psychiatric hospital, and a diagnosis of "incipient schizophrenic." Additionally, they include an extended "chronicle" covering petitioner's activities and treatments subsequent to February 1962 which concludes with a report of the East Providence murder and the waiver proceedings. Obviously, a "chronicle" which includes the report of the waiver hearing could not have been before the trial justice at that hearing. It should not have been certified as part of a record used in the waiver proceedings.

21.[5] The trial justice, however, did not in his decision give these as the reasons for his decision. Instead, he used stereotyped language which does not identify with Knott the offense with which he was charged or its prosecutive merit, his prior record, his potential danger to the community, and the possibility of a reasonable rehabilitation. His decision recites only that "* * * taking into consideration this boy's interest and also the interest of society, it would appear to this Court at this point that the interest of justice might be better served if this Court waived jurisdiction on this particular offense * * *."

These are conclusional, rather than factual, generalities which leave open for "assumption" the reasons which induced the ultimate determination to waive, and consign to speculation whether the required "full investigation" preceded the decision.

While the record also discloses the possibility that the hearing was inadequate and petitioner's representation ineffective, we do not reach these questions, but instead rest this opinion solely on the trial justice's failure to specify "* * * precisely why he concluded to waive jurisdiction," *Kent* v. *United States*, 343 F.2d 247 at 253, and on his

---

[5]There is a diversity of opinion on whether a minor who has been deprived of his liberty by a juvenile court can upon his release be tried before an adult court for the same offense. For cases holding that jeopardy does not attach in the juvenile court see: *Moquin* v. *State*, 216 Md. 524, 140 A.2d 914; *People* v. *Silverstein*, 121 Cal. App.2d 140, 262 P.2d 656; *In re McDonald*, 153 A.2d 651 (D.C.Munic.Ct.App.); *In re Santillanes*, 47 N. M. 140, 138 P.2d 503. Contra, *United States* v. *Dickerson*, 168 F. Supp. 899; (reversed on the ground that jeopardy does not attach at a waiver hearing, 271 F.2d 487) *Garza* v. *State*, 369 S.W.2d 36 (Tex.Ct.Crim.App. 1963). New Jersey by statute (N.J. Rev.Stat. 2A:4-37) has partially eased the problem by providing that a minor accused of homicide may be sentenced by the juvenile court up to the maximum period allowed under the criminal law for the offense committed, even though the confinement may extend beyond the child's 21st birthday, subject, however, to his right to be paroled. *Application of Gault, supra,* which extends certain constitutional protections to juvenile proceedings, will undoubtedly result in a reexamination of this issue.

neglect to discuss the reasons and other considerations which motivated his determination.

## IV

The respondent argues that we should not have reached the question of whether or not the *Kent* requirements were satisfied inasmuch as habeas corpus is not available to accomplish a review of alleged errors of law or as a substitute for a writ of error.[6] Those principles apply here, he says, because the alleged invalidity of the waiver order could have been challenged either by direct appeal from that order to this court under §14-1-7, as amended by P. L. 1961, chap. 73, sec. 14, or in the superior court on a motion to dismiss the indictment. The fault with this contention is that it overlooks the due process and fair play aspects of the *Kent* requirements.

The petitioner is now serving a life sentence at an adult prison. If there had been no procedural violation he might now be at liberty. The proceedings in the family court, if they did not trespass upon his constitutional rights, at least bordered upon the unconstitutional. They failed to measure up to what in *Kent* was described as "the essentials of due process and fair treatment." (p. 562, *supra*, 86 S. Ct. at 1059) The petitioner's failure to take the steps which respondent now suggests as being fatal to this application certainly was not occasioned by a conscious or knowledgeable design to bypass ordinary procedural requirements. No reasons of trial strategy or tactics dictated those omis-

---

[6]Although *Moretti* v. *Langlois*, 94 R. I. 470, 181 A.2d 625, *deMello* v. *Langlois*, 94 R. I. 497, 182 A.2d 116, *Lee* v. *Kindelan*, 80 R. I. 212, 95 A.2d 51, *Asadoorian for Writ of Habeas Corpus*, 48 R. I. 50, 135 A.322, support the legal proposition respondent urges, the suggestion that such a principle be applied in this case is a sharp reversal from the position he took in *Paquette* v. *Langlois*, 101 R. I. 1, 219 A.2d 569. In that case, decided a little more than a year ago, he joined a petitioner for habeas corpus in asking that the family court waiver proceedings be declared invalid because of noncompliance with the *Kent* requirements.

sions. Surely, it would have been irrational for one in petitioner's circumstances, if aware of the *Kent* requirements, to have virtually consented, as he did through his counsel, to the family court's relinquishment of jurisdiction or to have neglected to move to dismiss the indictment. Obviously, petitioner's defaults were attributable to an unawareness of the requirements which were not announced by the supreme court until a later date in *Kent*. Should petitioner by reason of these alleged procedural defaults now be denied the opportunity to question the validity of the determination that jurisdiction over him should have been waived? In analogous circumstances the supreme court was prompted to say:

> "* * * Surely no fair-minded person will contend that those who have been deprived of their liberty without due process of law ought nevertheless to languish in prison. * * * For such anomalies, such affronts to the conscience of a civilized society, habeas corpus is predestined by its historical role in the struggle for personal liberty to be the ultimate remedy * * *." *Fay* v. *Noia*, 372 U. S. 391, 441, 83 S. Ct. 822, 850.

The fundamental due process right to fair treatment,[7] without which our legal system cannot be either "just or humane,"[8] will not tolerate a result whereby one who was a juvenile when his alleged procedural defaults occurred must remain in prison for the balance of his life without opportunity to have determined under appropriate procedures and by an application of approved criteria whether the family court should have relinquished its jurisdiction. This is what respondent argues should be the consequences of his failure to appeal from the waiver order or to move to dismiss the indictment. It is offensive to our sense of fair play as well as repulsive to all that is basically right and just and fair to deny petitioner on such procedural and

---

[7] *Pee* v. *United States*, 107 U.S.App.D.C. 47, 274 F.2d 556 (1959).

[8] *Fay* v. *Noia*, 372 U. S. 391, 83 S.Ct. 822.

technical grounds a hearing at which the *Kent* requirements will be observed.

## V

While the court in *Kent* articulated procedural guidelines for waiver proceedings and set up criteria for reviewing a decision to waive, it did not fill the void left by the legislature in the establishment of substantive standards which would control in the determination of waiver questions. On that vital issue, it offered neither hints as to the appropriate underlying policy nor suggestions to the juvenile court on how to strike a balance between the desirability of rehabilitating the offending child on the one hand and the need to protect the security of the community on the other.

On this subject, the President's Commission On Law Enforcement And Administration Of Justice said in its report "The Challenge Of Crime In A Free Society" (1967) at page 81:

> "* * * The juvenile court is a court of law, charged like other agencies of criminal justice with protecting the community against threatening conduct. Rehabilitation of offenders through individualized handling is one way of providing protection, and appropriately the primary way in dealing with children. But the guiding consideration for a court of law that deals with threatening conduct is nevertheless protection of the community. The juvenile court, like other courts, is therefore obliged to employ all the means at hand, not excluding incapacitation, for achieving that protection. What should distinguish the juvenile from the criminal courts is their greater emphasis on rehabilitation, not their exclusive preoccupation with it."

There is, however, no consensus on what the controlling standards should be. The juvenile court in the District of Columbia in a policy memorandum in 1959 listed specific standards[9] among which were: the seriousness of the alleged

---

[9]The memorandum appears as an appendix to *Kent* starting at 565; 86 S. Ct. at 1059. It has since been withdrawn "* * * apparently in response to a barrage of criticism * * *." U. Pa. L. Rev., *supra,* at 1208.

offense, the need for community protection, the prosecutive merit of the complaint, the record of the juvenile, and the likelihood of success of the rehabilitative process.

Elsewhere, there have been other suggestions. The U. of Pa. L. Rev., *supra,* 1207, notes that:

> "A questionnaire circulated among fifty juvenile courts revealed that five factors commonly are taken into account in a decision to waive jurisdiction: (1) issues of contestable fact indicate that the hearing in the juvenile court will be prolonged; (2) the offense, occurring after correctional treatment for a previous transgression, is serious; (3) the juvenile's case is 'hopeless'; (4) the juvenile needs to be punished for his attitude; (5) the advantages in resources for treatment and public safety lie with the criminal court rather than the juvenile court. * * * "

The notewriters in the Harvard Law Review followed a slightly different tack. In "Juvenile Delinquents: The Police, State Courts, And Individualized Justice," 79 Harv. L. Rev. 775, 793, they say:

> "The object of the waiver decision is to weed out those children who cannot benefit from juvenile court treatment. The relevant factors are age, previous record, the nature of the crime, and the sophistication of the criminal method employed, but the process of decision may be distorted if a particular offense has aroused public opinion: well-publicized cases usually result in pressure on the juvenile authorities to permit prosecution in the adult criminal courts. * * *"

The supreme court in *Kent* did not endorse these or any other standards, but left untouched, perhaps for development on an ad hoc basis, what should be the controlling criteria. In this state, neither the courts nor the legislature have acted on the problem. To fill that gap the expertise of the family court should not be ignored. When the Kent case was decided by the circuit court of appeals for the District of Columbia, it said that "* * * the essence of the juvenile court system is subjective judgment—the skill and

experience of the specialist judge brought to bear upon young people in trouble." 343 F.2d 247, 253. It is upon that "skill and experience" which we now call. Notwithstanding the apparent difficulties encountered by the 1959 policy memorandum of the District of Columbia court, the family court should, if the legislature does not sooner act, bring the expertise of its judges and staff to the task of developing standards to be applied in the disposition of waiver questions. It is better at this late date that this be done completely and promptly in a single operation rather than by the customary case by case method.

Accordingly, in the exercise of the general supervisory authority over courts of inferior jurisdiction which the legislature conferred upon us in 1905 in the Court & Practice Act, Sec. 2 (§8-1-2) we suggest to the family court that it promulgate on or before October 2, 1967, a tentative rule delineating the controlling criteria. We leave to that court the advisability of inviting members of the bar and other interested and qualified persons to submit recommendations. We reserve, of course, the right to pass on whether the criteria thus adopted satisfy the demands of the statute and of the constitution.

## VI

Finally, we come to the question of what relief the petitioner should have. He has now passed the age of 21 and the family court no longer has jurisdiction over him. He asks, therefore, that his conviction be vacated, the indictment against him dismissed, and he be allowed to go free. This is the kind of "drastic relief" which the supreme court in identical circumstances in *Kent* deemed inappropriate. We fashion the relief we grant upon that which Kent received in that court.

The order of the family court is vacated and the case is remanded to the superior court for a hearing *de novo* on waiver consistent with this opinion. To the end that there

shall be no obstacle to a complete compliance in that court with required procedure, the family court is directed to make available to the superior court all of the files and records which would be available to a family court justice if he were considering the waiver question.

If the superior court on a nunc pro tunc basis finds that the waiver was inappropriate in the circumstances, then petitioner's conviction must be vacated. If, however, it should determine that the waiver order was proper when originally made, it "* * * may proceed, after consideration of such motions as counsel may make and such further proceedings, if any, as may be warranted, to enter an appropriate judgment." See: *Kent* v. *United States, supra,* at 565, 86 S. Ct. at 1059.

The petition for the writ of habeas corpus is denied pro forma. The petitioner shall remain in the custody of the respondent warden to be held in accordance with law and until further order of the superior court taken consistent with this opinion. The papers certified to this court are ordered returned to the clerk of the family court with our decision endorsed thereon.

## APPENDIX

"The Court:

"Lieutenant Crawshaw:

Now Lieutenant Crawshaw.

Your Honor please, this department investigated a missing person last December 22, 1961, as a result of that continued investigation, the respondent, Thomas Knott, was picked up by the Pawtucket Police and subsequently questioned and admitted killing Nancy Ann Fennier [sic] last December 22, 1961. He made a statement of his own free will and accord and also pointed out at the scene the par-

ticulars of the incident and corroborated things he said in the statement, and also this, that the police had never publicize [sic] information concerning how particular and how it was done, and we respectfully request the Court to waive jurisdiction of this matter.

"The Court: You want to be heard on this Mr. McGowan?

"Mr. McGowan: I appreciate the seriousness of the entire matter and I understand that this has been before the Family Court previously, and I think that I am going to leave it entirely in your Honor's discretion, I think you probably know the history of the psychiatrist in this situation, and I think you were instrumental in getting him some psychiatric treatment. So at this time all the Public Defender could do is ask the Court to decide in its own good discretion because of the seriousness of the entire situation.

"The Court: Anything you want to state now Mr. Attorney General?

"Attorney General's Office: I am appearing and representing as you know the Attorney General, and it's our feeling that the facts alleged, if true, present a matter so serious that it ought to be looked into by a Grand Jury and jurisdiction ought to be in the Supe-

rior Court, so I will strongly urge you in light of the seriousness of the allegation that you consider waiving jurisdiction now."

## DECISION

"The Court: Well taking into consideration this boy's interest and also the interest of society, it would appear to the Court at this point that the interest of justice might be better served if this Court waived jurisdiction on this particular offense to the proper court of jurisdiction that would hear this matter if this boy were an adult, and this Court does so waive."

*William F. Reilly*, Special Counsel to Public Defender, for petitioner.

*Herbert F. DeSimone*, Attorney General, *Donald P. Ryan*, Special Assistant Attorney General, for respondent.