**UNITED STATES of America,**
Appellee,

v.

**Albert Ray KITCHEN, Appellant.**

**No. 73-1094.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1973.

Decided Dec. 7, 1973.

David Murrin, Minneapolis, Minn., for appellant.

J. Earl Cudd, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before GIBSON, LAY and ROSS, Circuit Judges.

PER CURIAM.

■ This is an appeal from the district court in a conviction for illegal distribution of a controlled drug pursuant to 21 U.S.C. § 841(a)(1). This court has reviewed the grounds of error raised and finds there was sufficient evidence to sustain the defendant's conviction. We also find that no prejudicial error occurred when evidence of a prior transfer of narcotics by Kitchen's co-defendant Williams was admitted into evidence because the trial court properly instructed the jury that the evidence was not to be considered against the defendant, Kitchen.

However, in accord with United States v. Barnes, 486 F.2d 776 (8th Cir. 1973), we find error in the government's failure to produce at trial the informant Sammy Floyd.

On June 27, 1973, we remanded this cause to the district court for the limited purpose of holding an evidentiary hearing. At that time we observed:

The record demonstrates that the government at a pretrial proceeding assured both the court and defendant that the informant, Sammy Floyd, would be available to testify at trial. The record shows that Floyd did not appear at trial and the trial court excused the government from producing the informant on the government's statement that Floyd's whereabouts were unknown at the time of trial. The record demonstrates that Floyd may have possessed material knowledge relating to the defendant's participation in the charge of his distributing cocaine on September 24, 1971.

United States v. Kitchen, 480 F.2d 1222, 1223 (8th Cir. 1973).

Upon remand we ordered the trial court to hold:

[A] further hearing at which the government shall be given the opportunity of proving if such be the case, that it was genuinely unable through reasonable efforts to produce [Floyd] and also, if such be the case, that the government did not take steps to see to it that [Floyd] would be or become unavailable as a witness. The burden of proving these things should be on the government.

Id.

■ Thereafter the district court held a hearing and made extensive find-

ings of fact.[1] The district court certified the following conclusion to this court:

The government has failed to prove that "it was genuinely unable through reasonable efforts to produce * * *" the informant Sammy Floyd at trial.

The government took no "steps to see to it that [Floyd] would be or become unavailable as a witness."

1. The district court found:

1. David W. Major, who appeared both at trial and at the evidentiary hearing as a witness for the United States, is an agent of the Drug Enforcement Administration (formerly the Bureau of Narcotics and Dangerous Drugs), and was assigned to and worked on the above captioned case.

2. For a period of time prior to the trial in this case Agent Major caused the employment by the government of one Sammy Floyd as a special employee to give information on drug law violations.

3. Sammy Floyd is the informant whose presence at trial was requested by the defendants and whom the government promised but failed or was unable to make available.

4. The government had ceased to employ Floyd prior to the commencement of the trial in this case, but Agent Major was informed of the necessity and desirability of locating and producing Mr. Floyd at least three weeks prior to trial.

5. Although Agent Major some several months before trial had helped Floyd to rent an apartment, Floyd ceased to live there sometime prior to trial and Agent Major at trial time did not know where to locate him or where he resided.

6. Floyd was not easy to locate for several reasons; first, he was a drug user and this activity generally is conducted clandestinely; second, he was a convicted criminal who still associated with criminal elements; third, he feared for his life in part at least due to threats from one of the present defendants as a result of his activities as an informant and fourth, he had no known employment, no known residence at which to begin a search, and was not a native resident of or had "roots" in Minneapolis.

7. Agent Major contacted the Narcotics Squad of the Minneapolis Police Department and the Secret Service, who also had previously employed Mr. Floyd, in an effort to locate him.

8. Agent Major procured an order from his superior requesting the other Agents in his office to search for Mr. Floyd in the South side of the city when the agents were not otherwise occupied and were in the neighborhood. This order was published to all the agents in the office.

9. Agent Major himself kept a lookout for Mr. Floyd among his other duties although he did not leave the office at any time solely to search for Mr. Floyd.

10. Agent Major received a phone call from Floyd's girl friend approximately one week before the trial. She stated Floyd was out of town.

11. Agent Major received a phone call from Floyd late at night shortly before the trial. He attempted to arrange a meeting with Floyd so as to inform him of the necessity of his appearance at the trial but Floyd failed to keep the appointment. He did not tell Floyd that he was needed as a witness when he had him on the phone supposedly in the belief that he merely would hang up, whereas if he could meet him, he could impress him with his duty.

12. Agent Major considered other courses of action but rejected them. For example, that he considered contacting Floyd's parole officer but did not do so because Floyd had previously stated that parole did not call for him to make regular reports to the parole officer. Also, Agent Major did not request the Minneapolis Police to arrest nor even to attempt to locate Floyd because he had no probable cause on which to request such an arrest. The office he worked out of had no other black informants at that time and to ask other informants Floyd's whereabouts would have been futile.

13. Major never issued nor attempted to serve a subpoena or warrant on Floyd and he made no effort to check certain bars where it was known black persons tend to congregate. Though he knew approximately three weeks in advance of the date of trial he made no effort personally to find Floyd and in working on other investigations did not come across him; he did not contact the Hennepin County narcotics office, the FBI, the Minneapolis police or Internal Revenue Intelligence unit or the Burglary or Theft division of the Minneapolis police. He did not secure any order or lodge any request to anyone for Floyd's arrest, did not inquire at the Establishment bar where the confrontation with defendant Williams took place, made no inquiry at the Hennepin County Warrant office of the Police Department, nor at the University where Floyd once had been a student nor with the Hennepin County probation office where defendant was on probation for a state offense.

14. There was no evidence produced that the government in any way took steps to see to it that Mr. Floyd would be or become unavailable to appear at the trial and defendant's counsel did not and do not now so urge or contend.

On the basis of the district court's findings we now vacate the judgment of conviction. The cause is remanded for the district court to hold an evidentiary hearing in accord with United States v. Barnes, *supra*. At this hearing the government shall be given an opportunity to produce the informant, Floyd, for examination in the presence of the defendant and his counsel to determine whether the informant possessed any exculpatory evidence which would have in any way detracted from the credibility of the government's proof at the original trial. In the event the informant cannot now be produced by the government or that the informant is produced and the district court finds that he possesses exculpatory evidence the court shall grant a new trial. On the other hand, if the informant is produced and the district court finds that he possesses no exculpatory information which would have been prejudicial to the government's evidence at the original trial, the trial court may reinstate the judgment of conviction.