STATE OF WEST VIRGINIA

*v.*

DAVID HARVEY BREWSTER

(No. 14059)

Decided December 18, 1979.

*Edward V. Lee* for plaintiff-in-error.

*Chauncey H. Browning,* Attorney General, *Richard L. Earles,* Assistant Attorney General, for defendant-in-error.

MILLER, JUSTICE:

David Harvey Brewster appeals his armed robbery conviction in the Circuit Court of Cabell County. He contends that exculpatory evidence was withheld, that the prosecuting attorney made prejudicial remarks in his closing agrument, and that he was forced to wear physical restraints at trial.

The following are the facts of the crime as related by the State's witnesses. James W. Newman was a night watchman with the Tradewell Supermarket located on Roby Road and U.S. Route 60 in Huntington, Cabell County. At approximately 11:00 p.m. on May 14, 1974, Mr. Newman was at work at the supermarket, standing at a cash register talking with James Edward Myers, a part-time assistant manager with Tradewell. Mr. Myers was approached by a man who pulled back his coat, revealing a gun, and who said, "This is a stickup; give me your money." The man then turned to Mr. Newman and demanded his billfold. Mr. Newman refused, and, after two subsequent similar demands, the man pulled the gun from his belt and shot him. Mr. Myers then gave the robber approximately $1,000 of the store's money.

Two employees of the store, Ronald Ferguson and Melvin E. Spurlock, were in another area of the store stocking shelves. Upon hearing the shot, they went to the front of the store and were robbed. The robber unsuccessfully tried to kick down a door to a locked office where two more employees were present. A short time thereafter, the robber left the store, after warning the witnesses not to follow him. At the trial, the witnesses Newman, Myers, Ferguson and Spurlock identified the defendant, David H. Brewster, as the person who committed these acts.

Defendant's claim that the State suppressed certain exculpatory evidence rests on the following facts. A ballistics report indicated that the bullet found at the scene of the armed robbery matched the gun found in the possession of the defendant when he was arrested one month later in Tucson, Arizona. This information was given to the defendant by way of discovery several months prior to trial. However, on the first day of trial, during the noon recess and after the jury had been impanelled, the defense attorneys claimed they were informed by a police officer that the original report was in error and that, in fact, the bullet did not match the gun. Defense counsel made no objection to the court until after the trial, when the matter first surfaced on motion for new trial.

Defendant's claim of error must be rejected on two grounds. First, assuming that defense counsel learned of the alleged exculpatory evidence the first day of trial,[1] no action was taken either by way of objection or motion to the court to show how the defendant was prejudiced by the late disclosure. The necessity of a timely objec-

---

[1] No formal evidentiary hearing was conducted to determine when defense counsel first learned of this information. The prosecutor at the hearing on the motion for new trial stated he was unaware of the inaccuracy in the ballistics information until the trial. He also stated that he had checked on the matter with the police and was informed by the involved police officer that one of the defense attorneys had talked to him during the week prior to the trial and had been made aware of the discrepancy at that time.

tion is implicit in our holding in *Wilhelm v. Whyte*, ___ W.Va. ___, 239 S.E.2d 735 (1977), where we discussed at some length the timeliness of producing exculpatory material. *Cf. State v. Milam*, ___ W.Va. ___, ___ S.E.2d ___ (1979) (No. 14060); *State v. Cowan*, 156 W.Va. 827, 197 S.E.2d 641 (1973).

Of even more significance is the rule that a claim of suppression of exculpatory evidence must involve evidence relevant to an issue in the trial. This point was made in Syllabus Point 4 of *State v. Bolling*, ___ W.Va. ___, 246 S.E.2d 631 (1978):

> "Before prosecutorial error can occur under the doctrine of suppression of evidence, it must be shown that the evidence suppressed would be relevant to an issue at the criminal trial."

Much the same thought underlies the distinction drawn by the United States Supreme Court in *United States v. Agurs*, 427 U.S. 97, 49 L. Ed. 2d 342, 96 S.Ct. 2392 (1976), between evidence required to be disclosed through formal discovery requests and evidence required to be disclosed regardless of requests under the constitutional rule for producing exculpatory material as set forth in *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S.Ct. 1194 (1963). *Cf. State v. Belcher*, ___ W.Va. ___, 245 S.E.2d 161 (1978); Annot., 34 A.L.R.3d 16, 38 (1970).

Here, there was direct eyewitness testimony that the defendant robbed the store and several of its employees at gunpoint. The State was not required to show, nor did it attempt to prove, that the gun used in the robbery was the same gun found in the defendant's possession or that the bullet at the scene of the robbery matched that gun.

The second claimed error is that the remarks of the prosecuting attorney in his closing argument on rebuttal were prejudicial.[2] It is clear that these remarks were

---

[2] "Now, Mr. Lee makes one other observation and that is—Mr. Lee was speaking; he said—'I do not have to bring in any witnesses

directed at the defendant's failure to produce witnesses and not at the defendant's failure to testify. Thus, the rule in *State v. Lindsey*, ___ W.Va. ___, 233 S.E.2d 734, 740 (1977), that "the state should studiously avoid even the slightest hint as to the defendant's failure to testify," is not involved here.

It should also be noted that when defense counsel objected to the prosecutor's comments, the court promptly sustained the objection and advised the jury, "The reference to any witnesses who have not testified is not a subject that you can consider in arriving at your verdict." Under the circumstances of this case and in view of the trial court's cautionary instruction, we do not find the remarks so prejudicial as to warrant a reversal on this point. The general rule is stated in Syllabus Point 1 of *State v. Dunn*, ___ W.Va. ___, 246 S.E.2d 245 (1978):

> "A judgment of conviction will not be reversed because of improper remarks made by a prosecuting attorney in his opening statement to a jury which do not clearly prejudice the accused or result in manifest injustice."

While *Dunn* involves a prosecutor's opening statement, it is obvious that the same rule would be applicable to his closing statement or any remarks made during the trial in front of the jury. *Cf. State v. Boyd*, ___ W.Va. ___, 233 S.E.2d 710 (1977). The cases of *State v. Simon*, 132 W.Va. 322, 52 S.E.2d 725 (1949), and *State v. Nazel*, 109 W.Va. 617, 156 S.E. 45 (1930), involved rather similar statements by the prosecutor which were found not to constitute reversible error.

The defendant's primary ground for error is that over his objection he was forced to wear handcuffs at trial. In

---

to say he did not do it.' That's true; he doesn't. But don't you believe that if they existed, they would have?

· · · ·

"I guess that's about it. You're reasonable people. You know what happened. You have five believable witnesses here, all of whom say he is the one, and nobody said otherwise."

*State ex rel. McMannis v. Mohn,* ____ W.Va. ____, 254 S.E.2d 805 (1979), we discussed the constitutional aspects of requiring a defendant and his witnesses to appear at trial in identifiable prison clothing. Also at issue in *McMannis* was the propriety of the defendant's witnesses appearing at trial in physical restraints. We concluded that *Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L. Ed. 2d 126 (1976), absent some waiver, would require that the defendant could not be forced to wear identifiable prison clothing at trial. We also determined that this constitutional right did not extend to his witnesses. In the course of discussing the handcuff issue, we stated:

"The traditional rule is that a criminal defendant has the right, absent some necessity relating to security or order, to have his witnesses appear at trial free of shackles. [Citations omitted]

"Prior to *Estelle* most if not all of the courts had evolved the same rule with regard to the defendant appearing at trial in shackles. The basis for the rule as to both the defendant and his witnesses was that physical restraints marked the person as a violent criminal, which would seriously affect his credibility in the jury's mind." [____ W.Va. at ____, 254 S.E.2d at 809-10]

In Note 5 of *McMannis* we cited a number of authorities supporting the rule that a criminal defendant has the right, absent some necessity relating to courtroom security or order, to be tried free of physical restraints.[3]

---

[3] "*Kennedy v. Cardwell,* 487 F.2d 101 (6th Cir. 1973), *cert. denied,* 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974); *United States v. Samuel,* 431 F.2d 610, 614-16, 433 F.2d 663 (4th Cir. 1970), *cert. denied,* 401 U.S. 946, 91 S.Ct. 964, 28 L.Ed.2d 229 (1971); *Woodards v. Cardwell,* 430 F.2d 978, 982 (6th Cir. 1970), *cert. denied,* 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971); *Loux v. United States,* 389 F.2d 911, 919-20 (9th Cir. 1968), *cert. denied,* 393 U.S. 867, 89 S.Ct. 151, 21 L.Ed.2d 135; *Commonwealth v. Brown,* 364 Mass. 471, 478-80, 305 N.E.2d 830, 836-37 (1973); *State v. Roberts,* 86 N.J. Super. 159, 206 A.2d 200 (1965); *People v. Mendola,* 2 N.Y.2d 270, 159 N.Y.S.2d 473, 140 N.E.2d 353 (1957)."

See also *United States v. Theriault,* 531 F.2d 281 (5th Cir. 1976), *cert denied,* 429 U.S. 898, 50 L. Ed. 2d 182, 97 S.Ct. 262; *State v.*

This general rule is not substantially different from that stated in our early case of *State v. Allen*, 45 W.Va. 65, 30 S.E. 209 (1898), where we held in Syllabus Point 1:

> "While the practice of keeping a prisoner manacled when on trial before a jury has always been held in disfavor in England, and also in this country, yet the trial court has a discretionary power therein, but a power which should not be exercised under ordinary circumstances, or in any case where the prisoner is not violent and obstreperous, or escape be threatened; and such restraint should not be imposed except in cases of immediate necessity."

In fact, *Allen* stresses that the necessity must be immediate, by which is meant a pressing or manifest necessity. The immediate necessity is implicit in most courts' opinions because of the substantial prejudice created against the defendant by physical restraints.

The difficulty in the present case is that no record was made as to why it was necessary to try the defendant in physical restraints. Several courts have suggested that the question of whether a defendant should undergo trial in physical restraints should be settled at a pretrial hearing where an appropriate record can be made. *See, e.g., Kennedy v. Cardwell*, 487 F.2d 101 (6th Cir. 1973), *cert. denied*, 416 U.S. 959, 94 S.Ct. 1976, 40 L. Ed. 2d 310 (1974); *Commonwealth v. Brown*, 364 Mass. 471, 305 N.E.2d 830 (1973); *State v. Tolley*, 290 N.C. 349, 226 S.E.2d 353 (1976); *State v. Carter*, 53 Ohio App. 2d 125, 372 N.E.2d 622 (1977); *Willocks v. State*, 546 S.W.2d 819 (Tenn. Crim. App. 1976); *United States v. Theriault*, 531 F.2d 281 (5th Cir. 1976), *cert. denied*, 429 U.S. 898, 50 L. Ed. 2d 182, 97 S.Ct. 262. We adopted this suggestion in Note 7 of *McMannis* and concluded with this statement:

> "The A.B.A. Advisory Committee on the Criminal Trial, *Standards Relating to Trial by Jury* (Ap-

*Crawford*, 99 Idaho 87, 577 P.2d 1135 (1978); *People v. Boose*, 66 Ill.2d 261, 362 N.E.2d 303 (1977); *State v. Tolley*, 290 N.C. 349, 226 S.E.2d 353 (1976).

proved Draft 1968), at 96 n. 9, sets forth the following factors that have been considered in determining whether to use physical restraints:

" '(1) [T]he seriousness of the present charge, (2) the person's character, (3) the person's past record, (4) past escapes by the person, (5) attempted escapes by the person, (6) evidence the person is planning an escape, (7) threats of harm to others, (8) threats to cause disturbance, (9) evidence the person is bent upon self-destruction, (10) risk of mob violence, (11) risk of attempted revenge by victim's family, (12) other offenders still at large, . . .' [Citations omitted]"

Some courts have held that it is an abuse of discretion to try a defendant in physical restraints over his objection where no record has been made of the necessity for such restraints. *State v. Reid,* 114 Ariz. 16, 559 P.2d 136 (1976), *cert. denied,* 431 U.S. 921, 53 L. Ed. 2d 234, 97 S.Ct. 2191 (1977); *People v. Duran,* 16 Cal.3d 282, 127 Cal. Rptr. 618, 545 P.2d 1322 (1976); *People v. Boose,* 66 Ill.2d 261, 362 N.E.2d 303 (1977); *State v. Crawford,* 99 Idaho 87, 577 P.2d 1135 (1978); *Commonwealth v. DeVasto,* 387 N.E.2d 1169 (Mass. App. 1979). This is contrary to our holding in Syllabus Point 2 in *State v. Allen, supra,* where we stated:

"When the record is silent as to whether there was or was not any valid excuse for retaining the irons upon the prisoner during trial, the appellate court will presume that the court below exercised a sound and reasonable discretion in not causing them to be removed."

It cannot be doubted that physical restraints on a defendant at trial may create a substantial prejudice against him. Not only may physical restraints suggest to the jury that the defendant is a dangerous and violent person, but they may also suggest that he has engaged in past criminal acts and may lead the jury to infer that he is capable of having committed the crime for which he is being tried.

As the United States Supreme Court stated in *Illinois v. Allen*, 397 U.S. 337, 344, 25 L. Ed. 2d 353, 359, 90 S.Ct. 1057, 1061 (1970), "the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold." In *Eaddy v. People*, 115 Colo. 488, 492, 174 P.2d 717, 719 (1946), the court viewed the right to be tried without physical restraints as an assurance that "every defendant . . . be brought before the court with the appearance, dignity, and self-respect of a free and innocent man . . . ."

The defendant urges that we elevate the rule against his being tried in physical restraints to a constitutional level by applying the rationale of *Estelle v. Williams*, that the right to a fair trial under the Fifth and Fourteenth Amendments is implicated. We decline to do so. *Estelle* held that the compelled wearing of identifiable prison clothing at trial so directly suggests guilt that it violates the defendant's right to a fair trial.

There is a critical distinction between being forced to wear identifiable prison clothing and being forced to appear in physical restraints. The prison clothing serves no legitimate purpose, whereas physical restraints may be necessary in certain cases. This distinction was made in *Estelle:* "Unlike physical restraints, permitted under Allen [*Illinois v. Allen*], supra, compelling an accused to wear jail clothing furthers no essential state policy." [425 U.S. at 505, 48 L. Ed. 2d at 131, 96 S.Ct. at 1693]. While some courts have discussed the constitutional right to a fair trial as it bears on the issue of physical restraints,[4] only a few courts have set their holding on a constitutional basis. *See, e.g., State v. Crawford, supra; State v. Tolley, supra.*

Much the same protection can be afforded by holding under the common law rule that it is error to try a

---

[4] *Kennedy v. Cardwell*, 487 F.2d 101, 111 (6th Cir. 1973), *cert denied*, 416 U.S. 959, 40 L. Ed. 2d 310, 94 S.Ct. 1976 (1974); *People v. Duran*, 16 Cal.3d 282, 127 Cal. Rptr. 618, 545 P.2d 1322 (1976).

defendant in physical restraints over his objection without having developed an appropriate record to justify their use.[5] We therefore overrule Syllabus Point 2 of *State v. Allen* to the extent that it is inconsistent with this rule. *Allen's* position, that we may presume from a silent record that important substantive rights have been accorded a defendant, is no longer followed by this Court. *State v. Boyd,* ___ W.Va. ___, 233 S.E.2d 710, 719 (1977); *State v. Blosser,* ___ W.Va. ___, 207 S.E.2d 186, 190 (1974); *State ex rel. Strickland v. Melton,* 152 W.Va. 500, 506, 165 S.E.2d 90, 94 (1968); *cf. State v. Bolling,* ___ W.Va. ___, 246 S.E.2d 631, 637-38 (1978).

We do not believe, however, that the failure to develop a record of the necessity for physical restraints requires an automatic reversal of the defendant's conviction. The issue to be resolved is whether sufficient reasons for use of the handcuffs existed. If a manifest necessity existed for their use, this would outweigh, from a policy standpoint, their prejudicial effect.

The issue is analogous to the situation before the United States Supreme Court in *Jackson v. Denno,* 378 U.S. 368, 12 L. Ed. 2d 908, 84 S.Ct. 1774 (1964), where the state failed to hold an *in camera* voluntariness hearing on the defendant's confession. There, the Court disposed of the matter by remanding the case for a voluntariness hearing with the condition that if the confession was found to be voluntary by the trial court after the evidentiary hearing, the conviction would be affirmed. On the other hand, in the event the confession was found to be

[5] We recognize that in Notes 3 and 7 of *State ex rel. McMannis v. Mohn,* ___ W.Va. ___, 254 S.E.2d 805 (1979), we suggested that defense counsel might bear the preliminary responsibility to invoke a preliminary hearing on the question of whether the defendant can be tried in physical restraints. Since the preliminary decision to use physical restraints is ordinarily made by the custodial authorities, the State must share the burden of advising the court on this issue in advance of the trial, so that a proper record can be made. In other words, the defendant's right to be tried free of physical restraints cannot be defeated on the procedural basis that his counsel failed to invoke a pretrial hearing on this issue.

involuntary, then the conviction would be set aside and the defendant granted a new trial.

This type of disposition has been followed by several courts on this same issue. *See, e.g., United States v. Samuel,* 433 F.2d 663 (4th Cir. 1970), *cert. denied,* 401 U.S. 946, 28 L. Ed. 2d 229, 91 S.Ct. 964 (1971); *Commonwealth v. DeVasto,* 387 N.E.2d 1169 (Mass. App. 1979); *People v. Hope,* 67 A.D.2d 754, 412 N.Y.S.2d 430 (1979); *State v. Carter,* 53 Ohio App. 2d 125, 372 N.E.2d 622 (1977). A number of other courts have used the same technique on a variety of issues.[6]

In view of this rule, we remand this case to the Circuit Court with directions that it hold an evidentiary hearing to determine if there were sufficient facts to warrant trying the defendant in handcuffs.[7] If, under the standards set out in this opinion, the Circuit Court finds that the defendant should have been so tried, the conviction

---

[6] *See, e.g., United States v. Kolod,* 390 U.S. 136, 19 L. Ed. 2d 962, 88 S.Ct. 752 (1968) (inquiry into question of improperly obtained evidence); *Gravitt v. United States,* 526 F.2d 378 (5th Cir. 1976) (inquiry into prejudice from pre-indictment delay); *United States v. McSweaney,* 507 F.2d 298 (9th Cir. 1974) (hearing to investigate compliance with discovery rules under Jencks Act); *United States v. Kitchen,* 488 F.2d 572 (8th Cir. 1973) (hearing to inquire into existence of exculpatory evidence); *United States v. Haywood,* 150 U.S. App. D.C. 247, 464 F.2d 756 (D.C. Cir. 1972) (hearing on validity of search and seizure); *Smith v. Cox,* 435 F.2d 453 (4th Cir. 1970), *vacated and remanded on other grounds sub nom. Slayton v. Smith,* 404 U.S. 53, 30 L. Ed. 2d 209, 92 S.Ct. 174 (1971) (hearing on competency of trial judge); *Mendoza-Acosta v. United States,* 408 F.2d 1294 (D.C. Cir. 1969), *cert. denied,* 404 U.S. 846, 30 L. Ed. 2d 82, 92 S.Ct. 147 (1971) (hearing as to suggestiveness of lineup); *Allen v. Warden,* 216 Md. 602, 139 A.2d 266 (1958) (voluntariness of guilty plea); *People ex rel. Sickler v. Follette,* 31 A.D.2d 538, 295 N.Y.S.2d 158 (1968) (psychiatric evaluation of defendant); *Knott v. Langlois,* 102 R.I. 517, 231 A.2d 767 (1967) (waiver of juvenile jurisdiction).

[7] As noted by several courts, in assessing the appropriateness of using physical restraints, consideration must be given to other less drastic alternatives, such as placing additional security personnel in the courtroom. *E.g., Kennedy v. Cardwell,* 487 F.2d 101 (6th Cir. 1973), *cert. denied,* 416 U.S. 959, 40 L. Ed. 2d 310, 94 S.Ct. 1976 (1974); *Commonwealth v. Brown,* 364 Mass. 471, 305 N.E.2d 830 (1973).

shall be re-entered. If the Circuit Court finds the evidence to be insufficient, a new trial shall be accorded the defendant.

*Remanded with directions.*