243 So.2d 265

**STATE of Louisiana**

**v.**

**Larry Lee BOUDOIN and Thomas Hurst.**

**No. 50561.**

Jan. 18, 1971.

Benjamin E. Smith, New Orleans, for defendants-appellants.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.

GLADNEY, Justice ad hoc.

The defendants, Larry Lee Boudoin and Thomas Hurst, are appealing from their conviction of armed robbery at Gunther's Parkview Tavern on October 24, 1968, in violation of R.S. 14:64, and their sentences thereunder to serve 50 years in the state penitentiary, these sentences to run concurrently with those received in the case of State v. Hurst and Boudoin, No. 50,630 on the docket of this court, La., 243 So.2d 269, this day being handed down. The cases were argued together in this court.

For the reversal of their conviction and sentences they rely on six of the seven bills reserved during the trial, the first, levelled at the denial of their motion to quash and to suppress evidence, apparently having been abandoned since it was not perfected.

◼ The second bill was reserved when the trial judge denied the court-appointed attorney's request to provide defendants with counsel of their own choice, or else to permit them to represent themselves. Initially there was no serious argument in this court on this point, it merely being contended in brief that "it was error for the court not to have allowed these defendants to defend themselves." However, in a supplemental brief defense counsel cites a number of authorities to the effect that an unwanted attorney cannot be forced upon an accused against his wishes. While as a general rule this is true, none of the authorities cited support counsel's contention

here.[1] Furthermore, objection thereto must be made promptly and, once the trial has begun, the right to dispense with counsel is subject to the sound discretion of the court. See, Butler v. United States, 8 Cir., 317 F.2d 249, and the authorities therein cited.

In his per curiam to this bill the trial judge advises that originally counsel of their own choice did represent the defendant, but, in January of 1969, they withdrew and he, at that time, appointed the present counsel because he had represented these defendants in another matter. Subsequent thereto he heard no more about the matter until after the jury had been sworn and the state had made its opening argument, defense counsel at that time stating in open court the defendants did not want him to continue to represent them, preferring to secure their own attorney or else to represent themselves. He immediately called defendants and counsel to his chambers for

[1.] In Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, rehearing denied; Roth v. United States, 315 U.S. 827, 62 S.Ct. 637, 86 L.Ed. 1222, counsel representing one co-defendant was appointed to also represent the other co-defendant over his (the first co-defendant's) objection that there was a conflict of interest. In Hawk v. Hann, D.C., 103 F.Supp. 138, vacated 8 Cir., 205 F.2d 839, rehearing denied 207 F.2d 82 because of death of the defendant, an accused in a capital offense was without counsel and although the trial judge at the time of trial appointed the public defender to represent him, the judge refused to grant a continuance so the public defender could

familiarize himself with the case, and also denied the accused himself a continuance, with the result that the defendant was without counsel to represent him during the early part of the trial. The court held this action denied him a fair trial. In Smith v. United States, 5 Cir., 216 F.2d 724; Minor v. United States, 8 Cir., 375 F.2d 170, certiorari denied 389 U.S. 882, 88 S.Ct. 131, 19 L.Ed.2d 177; and Application of Trevithick, D.C., 260 F.Supp. 852, the defendants were without counsel but were held to have intelligently and competently waived right to counsel, choosing to take their chances on representing themselves.

a private consultation, during which he was informed the families of the defendants were attempting to employ an attorney for them. However, no one appeared to substantiate their claim and he concluded this was merely another "attempt to avoid going to trial," and refused to release defense attorney, who was not only thoroughly familiar with the case, but had, up until then, represented them most efficiently.

Under these facts, the trial judge prudently exercised his discretion in denying the request of defense counsel to be released.

In so far as the matter of permitting defendants to represent themselves is concerned, counsel for defendants in oral argument in this court stated he was in full agreement with the trial judge's conclusion under Bill of Exceptions No. 7 that defendants were unable to adequately represent themselves.

█ There is also no error in the next two bills, Nos. 3 and 4. They were reserved when the trial judge permitted a state witness, the owner of the establishment where the robbery allegedly occurred, to be questioned with respect to a gun that was offered in evidence by the state. There is no argument on these bills in this court, either orally or in brief, although in the bills it is asserted the request to exclude this testimony was on the basis that

it was prejudicial since this witness could not link the gun to these defendants.

The evidence objected to as incorporated in the bills themselves clearly reflects it was not prejudicial. In Bill No. 3 the witness was asked if the gun she was shown "appeared to look like" the gun she had seen used the night of the robbery and she stated she could not say as she didn't known much about guns. Under Bill No. 4 she was permitted to say the gun could be similar, but all she had seen that night was that "it was black and it was a gun." We agree with the trial judge's conclusion that there was no way in which such testimony could have prejudiced the defendants. She at no time sought to identify the gun being exhibited as that used in the robbery.

█ There was no argument in this court, either orally or in brief, in connection with Bill of Exceptions No. 5. This bill was reserved when one of the arresting officers, in answer to a question seeking to elicit information as to whether he had seen defendant Boudoin after he was placed under arrest said he had seen him and recognized him "from handling him on a previous occasion." When objection was made to the tenor of the answer, the trial judge, in overruling it, correctly instructed the jurors to disregard the statement, not only because it was not responsive to the question, but also because it had nothing whatever to do with the case. See State v. Davis, 241 La. 974, 132 So.2d 866. With

respect to the portion of his answer in which the officer said he had "handled" Boudoin previously, the judge instructed the jury that this "does not, of itself, imply that the defendant had ever been arrested by this officer," but could have meant merely that he had seen Boudoin on a previous occasion or occasions. We fail to see in what manner defendants could have been prejudiced by this ruling, particularly in view of the judge's instruction to the jury, and counsel urges none here.

██ Bill of Exceptions No. 6 was taken when the state offered certain exhibits in evidence, such as guns, handkerchiefs, sunglasses, and the driver's license of one of the defendants, all of which property had been identified by state witnesses and tied to defendants through the testimony of witnesses for the state. The trial judge advises in his per curiam that at the time the objection was made defense counsel did not state the reason for the objection; however, in the bill as drawn up it is stated the evidence should have been excluded because it was not "properly linked or properly introduced and identified."

Counsel is in error. In his per curiam the trial judge states all items were properly identified and tied to the defendants. Furthermore, as above pointed out, at the time the motion to quash and to *suppress evidence* was denied, counsel reserved a bill that was never perfected, and it must be considered as abandoned in this court, particularly since this was not urged here.

██ The final bill relied on was reserved when the trial judge denied defense counsel's motion for a mistrial, which motion is predicated on the contention that the jury was prejudiced by the fact defendants were handcuffed in front of them and forced to go to trial in that condition. In denying the motion the judge immediately advised the jury that these facts had no bearing whatever on the guilt or innocence of the accused, and they were not to give any consideration whatever to this in arriving at their verdict, it being merely a measure ordered by the judge to maintain orderly procedure and security in the courtroom. In his per curiam to this bill the trial judge outlines the conduct of the defendants throughout the trial and their efforts to disrupt the orderly proceedings in the courtroom, with which per curiam, as above pointed out, defense counsel fully agreed on oral argument in this court.

Such precautionary measures have been recently approved by the United States Supreme Court in Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353. In that case the court held that it is permissible to bind and gag an unruly accused, or even to have him removed from the courtroom, if he insists on conducting himself in such a disruptive manner that the trial cannot otherwise proceed. The trial judge in the

instant case properly concluded from the acts of the defendants that the only way in which the trial could proceed without disruption was to have the defendants handcuffed.

 In brief in this court defense counsel, for the first time, raises the contention that the trial and conviction here has subjected defendants to double jeopardy inasmuch as the evidence presented is the same as that used by the state to show system, intent, and motive in a prior prosecution that resulted in a conviction. The case referred to is State v. Hurst and Boudoin, No. 50,630 on the docket of this court, 257 La. 595, 243 So.2d 269, this day being handed down. As authority for the contention that this represents double jeopardy, counsel rely on the decision in Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469.

The Ashe case is clearly distinguishable from the instant case and cannot serve to sustain the double jeopardy argument. In that case three or four men, including Ashe, robbed six men who were engaged in playing poker on a certain night. He was charged with the robbery of one of the men at the game and when the jury found him not guilty of this charge "due to insufficient evidence," Ashe was then charged with the robbery of another of the participants at this same game. The wit-

nesses at the second trial were substantially the same as at the former trial, but there testimony was stronger, and this time he was convicted. Subsequently the United States Supreme Court held that since the jury in the first trial had determined by its verdict that Ashe was not one of the robbers, the state, under the doctrine of collateral estoppel, was constitutionally foreclosed from relitigating that issue in another trial.

In the instant case the accused are not being charged and tried for the robbery of another person present at Fatso's Bar, the robbery involved in State v. Hurst and Boudoin, No. 50,630 on the docket of this court, 257 La. 595, 243 So.2d 269, this day being handed down. Instead, the defendants are charged with armed robbery at Gunther's Tavern on a night distinct from that involved in the Fatso Bar robbery, at an entirely different location, and involving entirely different people. These were, in fact, two distinct crimes, although both were for armed robbery. The fact that evidence involved in the instant case was also used in the Fatso Bar case for the purpose of showing intent, knowledge, and system does not make this present conviction and sentence amenable to the charge of double jeopardy.

For the reasons assigned, the convictions and sentences are affirmed.