265 So.2d 230

**STATE of Louisiana**

v.

**Leroy TENNANT et al.**

**No. 51896.**

June 29, 1972.

Dissenting Opinion June 30, 1972.

Rehearing Denied July 31, 1972.

W. Lee Overton, Clinton, Robert H. Carpenter, Jr., Stanley E. Branton, St. Francisville, for defendants-appellants.

William J. Guste, Jr., Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Richard H. Kilbourne, Dist. Atty., Fred C. Jackson, Asst. Dist. Atty., for plaintiff-appellee.

SUMMERS, Justice.

A bill of information filed March 17, 1971 against William, Leroy and Granville Tennant, Tommy Ray Johnson and Larry McKee charged that on November 11, 1970 they committed simple burglary of the building known as B & B Electramatic Company. La.R.S. 14:62. Upon motion of the district attorney a severance was granted as to Larry McKee. The other four accused were jointly tried, found guilty and sentenced to nine years in the state penitentiary.

On this appeal two principal propositions, supported by bills of exceptions, are presented for review. One concerns the charge that defendants were handcuffed and in prison garb; the other involves the denial of a continuance. Both are without merit.

At the trial defendants were represented by three separate counsel, two retained and one appointed. Trial began on June 11, 1971. After seven jurors were chosen, the regular petit jury venire was exhausted and another panel was ordered. At this time defense counsel moved for a mistrial based on his statement that defendants were handcuffed and in prison garb. The motion was overruled and bills of exceptions were reserved.

The transcript discloses a statement by defense counsel on June 11, 1971 at 1:30 in the afternoon. He set forth in this oral statement that the proceedings began at 9 o'clock that morning and defendants, except for a brief recess for lunch, had been in court during that time, having been *brought into* the courtroom handcuffed and in prison garb. This, he stated, occurred while the prospective jurors were in the courtroom; that defendants were led out in prison garb and brought back at approximately 1:25 that afternoon handcuffed and still in prison garb. Thereafter the statement continues,

. . . and except for three defendants who had removed their shirts

. . . their striped shirts and one still had on full uniform and remained handcuffed until approximately 2:00 at which time paraded in front of the jury and venire back of the room and unhandcuffed . . . highly prejudicial and grounds for a mistrial. It was completely in the control of the State of Louisiana to dress these people in the proper clothes. I would also like to state that they are not criminals or convicts the fact that they were housed in the jail in Baton Rouge, could not get bond is no reason to be handcuffed or in prison garb which prejudices the jury and venire and is grounds for a mistrial and I move for mistrial . . . .

After pointing out that the handcuffs had been removed the district attorney stated: "We have to think about the safety in the Courtroom. The Sheriff doesn't know and I don't know. We are not taking any chances." Whereupon the motion was overruled; the trial judge declaring that the basic reason for the ruling was the disruptions which had occurred in the courtrooms throughout the Nation in recent years, and that he felt that, in the exercise of the discretion he had as a trial judge, he could take any action he considered necessary to insure the safety of court personnel. He further stated that he found no prejudice could result to the defendants in matters of this nature. As to the garb, he noted nothing about the dress

of defendants which differed from the dress of others. The district attorney remarked: "Your Honor, I didn't notice anything unusual." With respect to the handcuffs, it was the judge's considered opinion that this in nowise prejudices the defendants in the minds of the jurors.

Defense counsel then reserved bills of exceptions to the ruling, pointing out that defendants "are dressed in the garb worn by the East Baton Rouge Parish jail inmates which is blue and white stripes and it is very evident it is prison garb." It appears that these defendants, or at least three of them, had been imprisoned in the adjoining parish of East Baton Rouge and had been transported to Clinton for trial.

Thereafter selection of the jury continued, and from the newly subpoenaed venire three more jurors were selected, again exhausting the venire. More men were ordered subpoenaed for petit jury service, and court was adjourned for the weekend until June 14, 1971.

On June 14 the remaining two jurors were selected and just prior to the district attorney's opening statement defense counsel asked that the jury be retired and again moved for a mistrial "based on our previous grounds." He again dictated this statement into the record.

This morning during the selection of the last two jurors the four accused were again paraded before the prospec-

tive jurors dressed in what is obviously prison garb, blue denim, grey and white striped. This, of course, is the same objection we previously made, when the other two panels in which the first ten jurors were selected.

Counsel also stated that defendants were not then handcuffed.

To this motion, the trial judge made the same ruling, stating:

. . . I do not consider the manner in which they are dressed as garb as you speak of it to be indicative of prison garb at all. We see parading up and down the streets these days and in the courtroom and everywhere, people dressed in all kinds of fashions. Frankly, I didn't notice any difference in the way these people were dressed than many people I see on the streets and I am not going into that really.

Further, the trial judge stated:

I may add again, I have seen these jump suits some of these people are wearing and they look exactly like what these men have on. What difference does it make? . . . .

The judge again expounded at length upon his belief in the need to protect his court from the possibility of disruption and violence.

Bills of exceptions were reserved to this ruling.

Another and separate bill of exceptions was reserved when a motion for a mistrial was overruled. The motion, made when Larry McKee took the stand as a witness for the State, was based upon the statement of defense counsel that McKee, charged as a participant, was dressed in civilian clothes. The contention was that the State sought to cloak its witness in the garb of innocence, while the defendants were cloaked in the garb of the guilty—the convicted.

Considering first the question of the clothes worn by the defendants, the trial judge in his per curiam states that "Defendants were brought into court at approximately 9 A.M. They were at this time dressed in blue and white pin-stripe clothing which had been provided by East Baton Rouge prison officials." And then he states, "the garb complained of is no different from that which some carpenters and similar craftsmen wear in their work. As the court stated at the hearing on the motion, the clothing which defendants wore was not indicative of prison garb." Moreover, the judge points out that three of the defendants wore white T-shirts and the pin-stripe trousers, and the fourth wore the pin-stripe shirt and trousers.

■ Generally the right of an accused to the presumption of innocence guaranteed in all criminal trials in America entitles him to the garb of innocence. Thus

an accused may insist that he be brought into court with the appearance, dignity and self-respect of a free and innocent man. He may, therefore, require that he be tried in civilian clothing, free of the stigma attached to prison garb. Shultz v. State, 131 Fla. 757, 179 So. 764 (1938); 23 C.J.S. Criminal Law § 977.

 It is incumbent upon the party asserting a deprivation of this right to establish by clear and convincing evidence facts which support the claim. This standard of proof is required to overcome the broad discretion the law invests in the trial judge to supervise and administer the trial and its incidents within constitutional and legislative guidelines.

 The facts before us in support of defendants' claim consist entirely of statements by defense counsel. The statements are vague and indefinite on the critical issue of whether the clothes in which defendants were dressed were in fact so distinctive as prison garb that the clothes would be noticed as such and considered as such by the jurors chosen to try defendants. That the clothes were "prison garb" in appearance is a conclusion of defense counsel, contradicted categorically by the trial judge who described the clothing in some detail.

Current dress fashions indicate that many young people show a preference for dungarees, jeans and similar attire. The

work clothing worn by these young defendants, ranging between 18 and 26 years of age, described by the trial judge, would not necessarily be considered unusual, or peculiarly prison garb by today's standard. There were no large stripes, numbers, names or other such markings usually associated with prison garb. The fact that this clothing was issued to prisoners in the East Baton Rouge Parish prison does not make it readily recognizable as prison garb by persons not familiar with that prison. We venture to say that all prisons do not issue clothing, and it is not shown that the clothes described are generally considered prison garb. For these reasons, we find that these defendants have failed to bear the burden of proof incumbent on them to establish that the clothing they wore was regarded by the jurors as "prison garb."

The contention that defendants were in handcuffs is also based upon the statements we have quoted made by defense counsel, the district attorney and judge. The per curiam of the trial judge, however, is again in conflict with defense counsel's statement. The per curiam recites: "Further, in the immediate case the defendants were restrained by handcuffs when they were originally brought into court, but the handcuffs were removed even before defense counsel objected. The defendants wore no handcuffs or other restraining apparatus during trial." We accept this statement and conclude defend-

ants were not handcuffed during the trial proper.

However, this posture of the record leaves an important factual question in an inconclusive state. What occurred immediately prior to the actual trial proceeding each day when defendants were "brought into the courtroom," and the effect of that action on the jurors who were actually chosen is most pertinent.

■■ As a general proposition, contemplating a defendant handcuffed before the judge and jury during trial is an affront to the dignity and decorum of judicial proceedings which judges are charged with upholding. Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). Thus a person charged with crime cannot be subjected to any more restraint than is necessary for his detention to answer the charge, to insure the decorum of the proceedings and safeguard persons in attendance at court. U.S.Const., 6th Amend.; La.Const. art. 1 § 9; Illinois v. Allen, supra; Dennis v. Dees, 278 F.Supp. 354 (E. D.La.1968); State v. Spencer, 257 La. 672, 243 So.2d 793 (1971); State v. Boudoin, 257 La. 583, 243 So.2d 265 (1971); People v. Mendola, 2 N.Y.2d 270, 159 N.Y.S.2d 473, 140 N.E.2d 353 (1957).

■ Unquestionably, the use of guards in the courtroom during trial, and the necessity for the use of manacles are matters within the sound discretion of the trial judge. People v. Kimball, 5 Cal.2d 608, 55 P.2d 483 (1936); State v. Boyd, 256 S.W. 2d 765 (Mo.1953); State v. Boone, 355 Mo. 550, 196 S.W.2d 794 (1946), cert. denied, 334 U.S. 823, 68 S.Ct. 1078, 92 L.Ed. 1752; State v. McKay, 63 Nev. 118, 165 P.2d 389, 167 P.2d 476 (1946).

It is only when the abuse of the trial judge's discretion reaches a point where the trial becomes a farce and a fair trial is impossible that grounds are furnished for a mistrial. McCloskey v. Boslow, 349 F.2d 119 (4th Cir. 1965).

■ Allegations which charge an abuse of the trial judge's discretion and the denial of a fair trial in this respect must be sustained by clear and convincing proof on the part of whoever alleges the deprivation of this right. Odell v. Hudspeth, 189 F.2d 300 (10th Cir. 1951). This requirement derives from the lessons experience teachers, which the law upholds, that the handling of defendants during the trial is best regulated by the trial judge in the exercise of a sound discretion. Courts are reluctant, therefore, to interfere in these cases and question the discretion of the trial judge unless the record shows something more than the mere fact that defendant was handcuffed in the presence of the jury. State v. Spencer, 257 La. 672, 243 So.2d 793 (1971). It should be shown, for instance, that defendant's conduct did not warrant this restraint, restraint being un-

necessary and entirely unreasonable under the circumstances. And if the record does not show the occurrence was prejudicial, the motion for a mistrial will be denied. Gregory v. United States, 365 F.2d 203 (8th Cir. 1966); Hardin v. United States, 324 F.2d 553 (5th Cir. 1963); State v. Spencer, supra.

■ This record is inconclusive on these important facts, for we cannot determine whether the handcuffs were used solely for the purpose of transporting defendants from the jail in Baton Rouge to the courtroom in Clinton. It is not clear when the handcuffs were removed. It is not clear, even from defense counsel's statement, when defendants were said to be "paraded before the jury," that they were exposed to the view of the prospective jurors who actually heard the case. A large proportion of those called as prospective jurors were not selected, and we are not told who saw the defendants in handcuffs or precisely what did happen.

Significantly, it is noted that counsel for Granville Tennant makes no claim in brief that his client was handcuffed before the jurors who tried him. In fact, there is no sworn testimony from any source to support the claim.

As we said in State v. Spencer, supra: "No evidence was taken on the motion, nor was any voir dire examination of prospective jurors directed to whether they had seen defendant while manacled or were in any way adversely impressed by his appearance in the courtroom. In the absence of any showing of prejudice we cannot say that the judge erred in his ruling." In short, we are of the opinion that defendants have failed to present the facts with sufficient particularity to warrant upsetting this trial.

The bills presenting the issues relating to the handcuffs and prison garb are without merit.

Bills of exceptions were reserved by defendants to the denial of motions for continuance. The motions are based upon the contention that counsel did not have adequate time to prepare their defense. These motions were made by counsel for Tommy Ray Johnson and counsel for William and Leroy Tennant. Granville Tennant's counsel does not urge this contention.

Counsel for Johnson represents in brief that he made his motion orally, and the per curiam so indicates. Although counsel for William and Leroy Tennant represents in his brief that he filed a written motion, we are unable to find it in the record, and the judge's per curiam states that "This motion was not in writing . . . ." We understand this statement to refer to all motions for continuance. The minutes of court for June 11, 1971 record only that, "Each attorney asked for a continuance and, after hearing argument of counsel, a

continuance was denied." The minutes of March 17, 1971, disclose that defendants were represented at arraignment by "Hon. W. Lee Overton on behalf of their lawyer, Hon. Larry Uter." Mr. Uter subsequently died.

Trial began on June 11, 1971 and the transcript of proceedings for that day contains a statement by counsel for William and Leroy Tennant that a motion for a continuance was then tendered to the court on behalf of his clients along with a letter from an associate of their previous counsel, dated June 8, asking him to represent these parties, their previous counsel being the deceased Lawrence Uter. Counsel then stated that he was contacted by his clients three days prior to trial and he did not have sufficient time to prepare an adequate defense. The motion was denied.

At that time counsel for Johnson also asked for a continuance.

After stating the law applicable to a motion for continuance, the per curiam of the trial judge concludes:

Even without considering the failure to submit written motion, the defendants made no claim at the hearing on this motion that they were unable to have their witnesses available on the date scheduled, and in fact, their witnesses were present and testified, and for this reason, and others, the court considered three (3) days preparation for trial adequate.

The record reflects that the defendants were adequately represented, received a fair and impartial trial, and there was a well prepared defense. See State v. Pouncey, 182 La. 511, 162 So. 60.

■ A motion for a continuance is required to be by written motion alleging specifically the grounds upon which it is based, and when made by a defendant, must be verified by his or his counsel's affidavit. La.Code Crim.Proc. art. 707; State v. Polk, 258 La. 738, 247 So.2d 853 (1971); State v. Devenow, 253 La. 796, 220 So.2d 78 (1969). There is no provision in the law for an oral motion for continuance. Strictly speaking, therefore, a ruling on an oral motion for continuance to which a bill of exceptions has been reserved presents nothing for appellate review. Cf. State v. Jones, 233 La. 775, 98 So.2d 185 (1957); State v. Patterson, 176 La. 1013, 147 So. 62 (1933).

The many statements of fact and representations made in oral argument and in brief do not alter these requirements. The facts must be alleged and sworn to and thereafter proven by creditable evidence *in the record*.

■ Notwithstanding the failure to properly present the issue by written motion, a written motion would be equally without merit if it were not supported by more evidence than this record presents,

and denying a continuance under these circumstances is not an abuse of the judge's discretion. La.Code Crim.Proc. art. 712.

The convictions and sentences are affirmed.

TATE, J., concurs, assigning written reasons.

DIXON, J., concurs.

BARHAM, J., dissents and assigns reasons.

TATE, Justice (concurring).

I concur in the majority opinion, but I have reservations with regard to the affirmance of the conviction of Tommy Ray Johnson.

Johnson may have been denied his right to effective counsel, since (following the death of his retained counsel) counsel was *appointed* to represent him only on the morning of the trial, and his counsel's immediate motion for a continuance was denied. This might readily be considered inadequate time to prepare a defense for an accused on trial for a felony (and who was in fact sentenced to nine years in the state penitentiary).

The record shows that the accused Johnson and his co-defendants had been arraigned and had pleaded not guilty on March 17, 1971, about three months before

their trial of June 11. The record shows that their counsel at this time was the late Larry Uter. At the arraignment, they were represented by the "Hon. W. Lee Overton *on behalf of* their lawyer, Hon. Larry Uter."

Mr. Uter died on May 6, 1971. The three Tennant co-defendants showed up with their retained counsel on the trial date of June 11. The minutes further show that, on this date, the trial court appointed W. Lee Overton to represent Johnson. See also Tr. 85. Overton immediately moved for a severance and for a continuance. These motions were denied.

Johnson and the other defendants were forced to go to trial immediately, with ten members of the jury being selected that Friday. The rest of the jury was selected and the entire trial completed on Monday, June 14th, after the weekend.

Normally, the circumstance that Attorney Overton, as an accommodation for the actually retained counsel, stood *"on behalf of"* such counsel at arraignment, would not justify the court as considering him apprised of the defenses so as to permit Mr. Overton to be assigned on the morning of the trial to represent Johnson, unless such newly appointed counsel is granted a continuance to investigate and prepare a defense. However, the transcript of proceedings shows that, on the morning of the trial, Mr. Overton accepted the appoint-

ment and did not object to the trial judge's comment that the appointment had really been made at the arraignment three months earlier.[1]

Additionally, the record shows that the only motion made by the other defendants (i. e., for severance) was immediately made by newly appointed counsel. It was denied. It is not suggested that counsel was deprived of the opportunity to file other motions by the denial of a continuance. Considering also that a weekend intervened between the appointment and the actual production of witnesses, no real and actual prejudice in the preparation of a defense may be reflected by the record.

I will therefore concur for the time as to this point, but with great reservations.

Again, the writer is uneasy about our upholding the trial of all accused clothed in work jump-suits, the "prison garb" issued by the Baton Rouge parish prison. As the majority recognizes, trial in identifiable demeaning attire may be considered prejudicial as destructive of the presumption of innocence to which all accused before our courts are entitled.

I will concur in our holding that this record does not justify our holding the accused so prejudiced in the instant proceedings, but only in view of the observations of the trial court strongly suggesting that, for the times and in the area, many other citizens were normally so attired—although, for most areas of the State, people do not come to court so informally attired.

BARHAM, Justice (dissenting).

The trial of these defendants took place in East Feliciana Parish, and some of them were apparently transported directly into the courtroom there from the East Baton Rouge Parish jail. Bills of exceptions were reserved when they were forced to appear for trial in the gray and white striped blue denim uniforms worn by inmates of that jail. The majority here, like the trial judge in per curiam, has attempted to excuse the dress forced upon these defendants by saying that it was not too dissimilar to that worn by "some carpenters and similar craftsmen". Regardless of the opinion and the per curiam, these defendants wore the official garb of prisoners in the East Baton Rouge Parish jail, and this is admitted; and the jurors, who were reasonable, sensible persons, were certainly aware that these defendants were prisoners already incarcerated. Without citing cases throughout the country dealing with such a situation, I simply conclude

---

1. See Tr. 85, proceedings of June 11, 1971:
 "BY THE COURT: * * * Mr. Lee Overton is appointed to defend Tommy Ray Johnson. Reference is made to the minutes of the Court March 17, 1971 when he accepted the appointment.
 "MR. OVERTON: Thank you, Your Honor."

that it is improper, especially in this day and time, to present a defendant before a jury in prison uniform.

I also dissent from the majority's holding on the bill of exceptions which disclosed that the attorney for one of the defendants became involved in the case for the first time on the morning of the trial. I am not concerned with whether the motion for continuance was in writing or not.

This defendant was sentenced to nine years in the state penitentiary. No matter how competent counsel may be as to legal ability, he was not competent to represent this defendant when he had had no opportunity for counseling with the defendant or investigating the case. This is a denial of due process, and the technical requirement that the motion for continuance be in writing must yield to the constitutional requirement of due process.