290 So.2d 860 (1974)
STATE of Louisiana
v.
Joseph L. KINCHEN.
No. 53878.
Supreme Court of Louisiana.
February 18, 1974.
Rehearing Denied March 22, 1974.
*861 Murphy W. Bell, Public Defender, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Bob H. Hester, Sp. Pros. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
Appellant Joseph L. Kinchen was charged by bill of information with the violation of Articles 27 and 30 of the Criminal Code in that he attempted to murder Officer Harold B. Billingsley of the Baton Rouge Police Department. After trial by jury he was found guilty as charged and sentenced to be committed to the custody of the Department of Corrections for a period of twenty years at hard labor. This appeal followed.

I.
In the early morning hours of August 27, 1972, Policeman Billingsley was patroling with his dog on Florida Street in a police scout car. At about 2:00 o'clock a. m. he saw a car run a red light. He immediately commenced a pursuit of the offending vehicle, meanwhile transmitting by radio a description of the car and its license number to headquarters. At Twenty-third Street, he signaled the car to a stop, bringing his own vehicle to a stop fifteen feet to its rear. As Billingsley got out of the scout car, the driver ahead got out of his vehicle, crouched, fired at Billingsley and then drove away eluding pursuit.
*862 Other police officers quickly traced the car ownership to John Alvin Kinchen, appellant's brother, and its registration to 950 Frisco Alley where the car was soon found. The car was sent to the State Police Crime Laboratory and dusted for prints. A technician lifted several prints. One from the rear view mirror was identified as appellant's.

II.
During the morning hour before this case was called for trial, while the court was engaged in preliminary matters, appellant and another accused, both of whose trials were set for that day, were brought into court by Sheriff's deputies. They were dressed in prison garb, handcuffed and seated in the jury box where all prisoners are seated during the morning hour. At the time some or all of the members of the jury venire were seated in the spectator seats of the courtroom.
Appellant had only been in the courtroom ten minutes when the trial judge became aware of his presence. He immediately caused appellant to be returned to the jail to be dressed in civilian clothes. Later he returned to the courtroom appropriately dressed.
After these events transpired, and while the members of the jury venire were outside the courtroom, at the suggestion of defense counsel an effort was made to substitute jury venires with another section of the court, but it could not be arranged. Defense counsel then moved to excuse the entire jury venire on the ground that the accused had been denied the presumption of innocence when he was brought into the courtroom handcuffed and in prison garb. The motion was denied and a bill of exceptions was reserved. Appellant's case was then called, the jury was selected, and the case proceeded to trial.
The right of an accused to the presumption of innocence, and the effect of subjecting him to trial in shackles and prison garb, was discussed at length in State v. Tennant, 262 La. 941, 265 So.2d 230 (1972). We recognized then and reiterate today that an accused may insist that he be brought into court with the appearance, dignity and self-respect of a free and innocent man. Id.
Those asserting the deprivation of this right, we held, must establish a deprivation by clear and convincing evidence facts which support the claim. We held there that the claim was not properly supported by the evidence.
In State v. Spencer, 257 La. 672, 243 So.2d 793 (1971), the defendant was brought into the courtroom in handcuffs before the voir dire examination of the prospective jurors. The handcuffs were removed as soon as the prisoner was seated and were not replaced during the trial. A defense motion to disqualify and discharge the jury venire was denied. No voir dire examination was directed to whether the prospective jurors had seen the defendant while manacled or were in any way adversely impressed by his appearance. In the absence of any showing of prejudice, we held that the judge did not err in his ruling.
The fact that the defendant was escorted out of the courtroom in handcuffs in the full view of the jury on one occasion did not vitiate the conviction in State v. Crockett, 262 La. 197, 263 So.2d 6 (1972). Cf. State v. Boudoin, 257 La. 583, 243 So. 2d 265 (1971). See also: Thomas v. Beto, 474 F.2d 981 (5th Cir. 1972); Bentley v. Crist, 469 F.2d 854 (9th Cir. 1972); Hollins v. Beto, 467 F.2d 951 (5th Cir. 1972); United States v. Rickus, 351 F.Supp. 1386 (E.D.Pa.1972); Moffett v. State, 291 Ala. 382, 281 So.2d 630 (1973); Boswell v. State, 290 Ala. 349, 276 So.2d 592 (1973); People v. Earl, 29 Cal.App.3d 894, 105 Cal.Rptr. 831 (1973); People v. Herman, 512 P.2d 1159 (Colo.1973); Scott v. State, 504 P.2d 10 (Nev.1972); State v. Doby, 18 N.C.App. 123, 196 S.E.2d 377 (1973); Vavra v. State, 509 P.2d 1379 (Okl.Cr.1973); McGregor v. State, 491 S.W.2d 619 *863 (Tenn.Cr.App.1973); Pittman v. State, 488 S.W.2d 89 (Tex.Cr.App.1972); State v. Archuletta, 28 Utah 2d 255, 501 P.2d 263 (1972).
Several factors convince us that this trial should not be set aside on the mere showing that defendant was brought into court for a brief ten minutes before trial during a morning hour while members of the jury venire were in the courtroom. In his per curiam the trial judge stated that no prejudice to the defendant was shown. Appellant did stand trial in civilian clothes without handcuffs. No effort was made by defense counsel to ask members of the jury venire on voir dire whether they recognized defendant as the same person who had been in court earlier in handcuffs and prison garb during a busy morning hour when many distractions may otherwise have held their attention. There is no adequate showing that the handcuffs were conspicuous or that the prison garb was noticeably different from civilian garb such as to draw the attention of the jury and create an impression which was detrimental to appellant. There is no evidence that the jury which tried appellant recognized him as the handcuffed party in the jury box prior to trial.
These are the areas in which the discretion of the trial judge is called into play. To find an abuse of that discretion requires a clear showing in the record. And it is only when the abuse of that discretion reaches a point where the trial becomes a farce and fairness is impossible that grounds are furnished for a mistrial. La. Code Crim.Proc. art. 775; McCloskey v. Boslow, 349 F.2d 119 (4th Cir. 1965); State v. Tennant, supra.
This bill has no merit.

III.
As may be inferred from the brief narrative of facts, the defense was an alibi. He sought to prove he was in Mississippi at the time. The question of identification was therefore crucial to the prosecution. Appellant's fingerprint obtained from the rear view mirror of the automobile was therefore part of the State's effort to disprove appellant's alibi by establishing that he was present in the automobile on the night of the attempted murder.
Sergeant Alton Baxter, Jr., of the Louisiana State Police Bureau of Identification was called on behalf of the State. He testified that he lifted appellant's thumb print from the rear view mirror. He was asked, during the investigation, to compare the thumb print with the appellant's prints. He produced in court a blow up of the print he lifted from the car mirror and a Xerox copy of a fingerprint card with which he made the comparison. Sergeant Baxter was positive that the thumb print from the mirror was the same as the thumb print on appellant's fingerprint card. At this time the Assistant District Attorney offered the Xerox copy of appellant's fingerprint card and the blow up of the thumb print into evidence.
After stating that he did not want the jury withdrawn, defense counsel stated that he objected to the introduction of these two documents "on the same grounds that I made by objection No. 5 and No. 6 to the mug shots," at which time the jury had been withdrawn. The objection was overruled and Bill No. 3 was reserved.
Objections 5 and 6 referred to by defense counsel were entered into the record when the State sought to introduce a picture lineup shown to Officer Billingsley and the evidence envelope in which they had been kept.
The basis of this objection was that it was highly prejudicial to appellant to introduce the photographs "because the jury knows that the only way that Sergeant Wilson (the officer who conducted the photo lineup) could have gotten a mug shot is because the man's got a record, he's been booked into jail, and they took his picture. . . ." Counsel then, after argument, moved for a mistrial because of the reference to "mug shots" of appellant during *864 examination of Sergeant Wilson. The motion was denied.
When the Assistant District Attorney resumed questioning of Sergeant Wilson on the photo lineup, defense counsel objected to any further questioning about the photo lineup. A mistrial was demanded when further testimony referred to "mug shots" the defense theory being that reference to a mug shot of appellant, in use prior to appellant's arrest on the attempted murder charge, indicated quite clearly that appellant had previously been charged with another crime. Finally the photos used in the photo lineup were introduced into evidence and shown to the jury. They were repeatedly referred to by defense counsel in the cross-examination of Sergeant Wilson. No bills of exceptions were perfected to these objections.
The Xeroxed fingerprint card at issue consisted of two 8 x 10 pages stapled together. The first page contains appellant's complete fingerprints. The second page is a reference to his record at Louisiana State Penitentiary, Angola, Louisiana, revealing an arrest on April 2, 1970 on a charge of simple burglary for which the "disposition" was "two years". Other data concerned the residence, place of birth, occupation, scars and marks of defendant, and the name and address of his nearest relative.
In brief defense counsel contends that the fingerprint card was irrelevant to the issue of identification. This irrelevancy, it is argued, and the highly prejudicial and harmful effect of the defendant's prior criminal record could have been completely avoided, without destroying whatever probative value the fingerprint records had, by simply deleting or covering the conspicuous reference to the prior criminal record in such a manner that the jury could not see it.
Relevancy of the fingerprint cards is clearly shown. It is evidence of the identity of the party who is alleged to have fired at Officer Billingsleythe real and vital issue of the case. La.R.S. 15:435, 15:441. It is probably the best known method with the highest probative value for identification. There has been no showing in this record that the jury saw other than the fingerprint page of the two-page exhibit. Merely because relevant evidence bearing upon the question at issue also tends to show the commission of other crimes by the accused does not make such evidence inadmissible. "It is competent for the prosecution to put in evidence all relevant facts and circumstances which tend to establish any of the constituent elements of the crime with which the accused is charged even though such facts and circumstances may prove or tend to prove that the defendant committed other crimes." State v. Riley, 182 Neb. 300, 154 N.W.2d 741 (1967).
Moreover, defense counsel could have requested at the time the Xerox fingerprinting exhibit was offered that the second page be either removed, or covered in such a manner that the jury could not read the entries. He did not do so, although he examined the exhibit and was aware of the second sheet and its content. United States v. Christian, 427 F.2d 1299 (8th Cir. 1970); Rhome v. State, 222 So.2d 431 (Fla.App.1969); State v. Riley, 182 Neb. 300, 154 N.W.2d 741 (1967). Nor did defense counsel make clear the basis of his objection. Cupo v. United States, 123 U. S.App.D.C. 324, 359 F.2d 990 (1966); United States v. Anderson, 425 F.2d 87 (5th Cir. 1970).
And there is no proof produced in this record that the jury read other than the fingerprint page to which the State referred. At no time was the second page ever referred to by counsel, by the witness or others. People v. Shipp, 90 Ill.App.2d 442, 232 N.E.2d 755 (1967). Cf. State v. Williams, La., 288 So.2d 319, decided January 14, 1974.
In summary it may be said that defense counsel did not specifically direct the judge's attention to the second sheet.
*865 Rather, he based his objection on his previous objections to the introduction of the mug shots. Had his attention been directed to the second page, the trial judge would have been given an opportunity to rule on its admissibility. La.Code Crim.Proc. art. 841.
In any event, the evidence of guilt in this case is overwhelming. There was an eyewitness to the crime. Officer Billingsley, the victim, made positive identification of appellant; from the license number furnished by Billingsley the car's registration disclosed the owner of the car to be appellant's brother and its registered address to be where they found the car; the police crime laboratory immediately dusted the car for fingerprints and found one print that matched appellant's. La.Code Crim.Proc. art. 921.
For the reasons assigned, the conviction and sentence are affirmed.
BARHAM, J., concurs in decree.
DIXON, J., concurs.