489 So.2d 970 (1986)
STATE of Louisiana
v.
Jerry J. BUTTNER.
No. KA 3407.
Court of Appeal of Louisiana, Fourth Circuit.
May 21, 1986.
Writs Denied September 19, 1986.
*971 William J. Guste, Jr., Atty. Gen., Barbara B. Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Pamela S. Moran, Asst. Dist. Atty., New Orleans, for State.
Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for defendant.
Before BYRNES and WARD, JJ., and HUFFT, J. Pro Tem.
PRESTON H. HUFFT, Judge Pro Tem.
On March 31, 1980, the defendant was charged by bill of information with the attempted second degree murder of Officer Henry Meliet on March 9, 1980 a violation of R.S. 14:27(30.1).[1] On April 2, 1980, the defendant was charged also by bill of information with the intentional or criminally negligent discharge on March 9, 1980 of a pistol, where it was forseeable that such *972 discharge might result in death or great bodily harm to a human being, a violation of R.S. 14:94.
On June 30, 1980, the State dismissed the attempted second degree murder bill of information and filed a direct bill charging the defendant with attempted first degree murder of Officer Henry Meliet in violation of R.S. 14:27(30). The defendant waived formal reading of this bill of information and entered a plea of not guilty. After a jury trial on February 18, 1981 the defendant was found guilty as charged and sentenced to twenty-five years in the custody of the Louisiana Department of Corrections. This conviction was reversed by the Supreme Court on the basis that no valid bill of information had been filed. State v. Buttner, 411 So.2d 35 (La.1982).
The defendant was re-tried on July 27, 1983 on the attempted first degree murder charge and again found guilty. The defendant was sentenced to twenty-five years in the custody of the Louisiana Department of Corrections to run consecutively with the sentence imposed as a result of his conviction on April 7, 1981 for violating R.S. 14:94. A motion for an out of time appeal was filed and granted.
On March 9, 1980, at about 6:50 a.m. Tony Ferrand, an employee of the Marriott Hotel, saw two people running toward the Marriot Hotel. They were followed by the defendant, who was shooting at them with a pistol. Mr. Ferrand went into the coffee shop and told Officer Henry Meliet, who was a patron in the coffee shop, of the incident. Officer Meliet went out of the back door and saw the defendant chasing two people. The defendant had a pistol in his belt. Officer Meliet identified himself as a police officer and told the defendant to drop his weapon. The defendant pulled his weapon out of his belt and fired twice at Officer Meliet. Officer Meliet returned the fire, striking the defendant in the leg. The defendant ran back into the Pirate's Bar Den and fired several more shots inside the bar. After a few minutes, the defendant stated that he was out of bullets and wanted to surrender.

Original Assignment of Error
Originally the defendant in his only assignment of error contended that the trial court erred in denying his motion to quash on the grounds of double jeopardy. The motion urged that the defendant's conviction on the charge of intentional discharge of a firearm in violation of R.S. 14:94 precluded prosecution on the charge of attempted first degree murder. C.Cr.P. art. 596 provides:
Double jeopardy exists in a second trial only when the charge in that trial is:
(1) Identical with or different grade of the same offense for which the defendant was in jeopardy in the first trial, whether or not a responsive verdict could have been rendered in the first trial as to the charge in the second trial; or
(2) Based on a part of a continuous offense for which offense the defendant was in jeopardy in the first trial.
Double jeopardy provisions protect an accused not only from a second prosecution on the same offense, but also from multiple punishments for the same criminal conduct. State v. Vaughn, 431 So.2d 763 (La.1983); State v. Steele, 387 So.2d 1175 (La.1980); United States v. Benz, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931).
Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not. Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); State v. Dubaz, 468 So.2d 554 (La.1985); State v. Coody, 448 So.2d 100 (La.1984). This test is applied to evidence required to convict, not to all evidence presented at trial. State v. Steele, supra; State v. Rogers, 462 So.2d 684 (La.App. 4th Cir.1984).
In the instant case, the defendant was previously convicted of intentional discharge of a firearm in violation of R.S. 14:94. That crime is defined as follows:

*973 A. Illegal use of weapons or dangerous instrumentalities is the intentional or criminally negligent discharging of any firearm, or the throwing, placing, or other use of any article, liquid, or substance, where it is forseeable that it may result in death or great bodily harm to a human being.
At that trial, the State produced witnesses to testify that the defendant ran into the Pirate's Den Bar and began shooting at two men. The defendant fired several more shots in the bar and then left. Outside of the bar, the defendant shot at Officer Meliet, who had been summoned to the scene.
The conviction in the second trial, from which this appeal was taken, is for the attempted murder of Officer Meliet. While evidence of the shooting of Officer Meliet was considered at the trial of the R.S. 14:94 violation, the basis of the conviction was evidence of the defendant's behavior inside of the bar before Officer Meliet was summoned. Thus, these two crimes actually involved different victims and different situations although they arose out of the same transaction.
In State v. Pettle, 286 So.2d 625 (La. 1973), the court found that trying a defendant for attempted murder after he had entered a plea of guilty to manslaughter did not place the defendant in double jeopardy. In that case the defendant entered a bar and seized a bar attendant while holding a knife to her ribs. She was able to get free of the defendant's grasp. The defendant then grabbed a second woman and forced her into his car at knifepoint. The second victim's body was found later.
In this case the defendant's crimes are separate and distinct offenses. The gravamen of the second offense (a violation of R.S. 14:27 (30)) for which the defendant was held accountable is not essentially included in the first offense (a violation of R.S. 14:94). Under these circumstances we find that the defendant has not been placed in jeopardy twice.
This assignment is without merit.
In a pro se brief the defendant assigned the following errors.

Assignment of Error Number One
This assignment is a duplication of defendant's original assignment of error double jeopardy.

Assignment of Error Number Two
By this assignment of error, the defendant urges that he was prejudiced by the fact that he was tried in prison clothes. A defendant cannot be compelled to stand trial before a jury while dressed in identifiable prison clothing. Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1967). The accused must prove by clear and convincing evidence that his prison attire deprived him of the right to appear in court with the dignity and self-respect of a free man. State v. Tennant, 262 La. 941, 265 So.2d 230 (1972). When examining this issue on appellate review, the court has focused on whether the defendant demonstrated that his clothing at trial was readily identifiable as prison attire. State v. Leggett, 363 So.2d 434 (La.1978); State v. George Claiborne, 483 So.2d 1301 (La.App. 4th Cir.1986).
In State v. Tennant, supra several co-defendants were brought into court handcuffed and dressed in blue and white pin-stripe clothing which had been provided by prison officials. The defendants moved for and were denied a mistrial. On appeal the Supreme Court upheld the lower court's decision stating:
There were no large stripes, numbers, names or other such markings usually associated with prison garb. The fact that this clothing was issued to prisoners in the East Baton Rouge Parish prison does not make it readily recognizable as prison garb by persons not familiar with that prison. We venture to say that all prisons do not issue clothing, and it is not shown that the clothes described are generally considered prison garb. For these reasons, we find that these defendants have failed to bear the burden of proof incumbent on them to establish that the *974 clothing they wore was regarded by the jurors as "prison garb." At 234.
In State v. Leggett, supra at 437, the trial judge questioned the defendant as to whether he felt disadvantaged by his attire (a yellow jumpsuit provided by prison authorities). The defendant answered that he desired to wear his own clothing instead. The trial judge proceeded with the defendant wearing the same jumpsuit. On appeal the defendant assigned this as error. The Supreme Court held that although this may have prejudiced the defendant, the other evidence in the record had far greater potential for prejudicial effect on the jury. Thus the error did not warrant reversal.
Included in Leggett is some discussion on the timeliness of the defendant's objection to the prison clothes. "When the defense objects before the jury is impaneled and the objected [sic] is not simply a dilatory tactic, then the state is not prejudiced by allowing defendant the extra time to change to civilian clothing." At 438.
In State v. Thomas, 325 So.2d 593 (La. 1976), the court noted that the defendant raised no objection at the time of the occurrence.
An accused may insist that he be brought into court with the appearance, dignity and self-respect of a free and innocent man. However, one asserting the deprivation of such right must establish a deprivation by clear and convincing evidence. At 594.
In the instant case, the defendant made no objection to his attire at trial. Although the defendant was dressed in identifiable prison clothes, the evidence at trial was much more prejudicial to the defendant. Further the appearance of the defendant in prison clothing was apparently part of a defense strategy to depict the defendant as a person who was already serving time for a conviction of the same crime as a result of his previous trial for violation of R.S. 14:94. In effect, the prison clothing and the reference to the previous conviction by defense counsel was part of a strategy to indirectly place before the jury for its consideration and sympathy the issue of double jeopardy, which had been rejected by the district judge in his denial of the motion to quash. The strategy did not work. The defendant cannot now be heard to complain.
There is no merit to this assignment of error.

Assignment of Error Number Three
The defendant argues that he was denied his right to effective assistance of counsel.
Claims of ineffective assistance of counsel are more properly raised by application for Writ of Habeas Corpus and not on appeal. The necessity of a writ application is to allow for a full evidentiary hearing. State v. Prudholm, 446 So.2d 729 (La. 1984); State v. Poche, 464 So.2d 969 (La. App. 4th 1985). However, when the record discloses sufficient evidence to decide the issue of ineffective counsel raised by assignment of error on appeal, in the interest of judicial economy, that issue may be considered. State v. Seiss, 428 So.2d 444 (La. 1983); State v. Robinson, 461 So.2d 403 (La.App. 4th Cir.1984).
A claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). Utilizing the Strickland test, for a convicted defendant's claim of ineffective assistance of counsel to have merit, the defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defendant. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Strickland, supra at page 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive the defendant of a fair trial, whose result is reliable. Strickland, supra at page 2064. The defendant must make both showings in order to prove that counsel was so ineffective *975 as to require reversal. A court need not consider the deficiency prong if it concludes that the defendant has demonstrated no prejudice. That prejudice must be affirmatively proven, not simply alleged. Strickland, supra; Celestine v. Blackburn, 750 F.2d 353 (5th Cir.1984), cert. den., ___ U.S. ___, 105 S.Ct. 3490, 87 L.Ed.2d 624 (1985).
In the instant case the defendant specifies three instances of ineffective assistance, i.e. failure to file pre-trial motions, failure to object to prison clothes and pointing out a prior conviction thereby prejudicing the defendant.
A defense counsel is not required to make motions and objections when they are not necessary. In order to allege that such failures resulted in ineffective assistance of counsel the defendant must show specific prejudice. State v. Seiss, supra.
In the instant case the defendant makes no showing that a failure to file pre-trial motions in any way prejudiced him. Thus he has not met his two fold burden of proof as to this claim. Nor has the defendant met this burden with respect to his claim of failure to object to prison attire.
The defendant's third claim comes as a result of the following exchange.
EXAMINATION BY MR. DOSKEY
Q. Officer, as a matter of fact, the only time you've seen the defendant was that morning, and in courtroom appearances, right?
A. Yes, sir.
Q. In fact, you did testify, did you not, in April of 1981, when the defendant was charged with the negligent or intentional discharge of a firearm, did you not?
A. Yes, sir; I did.
Q. And in fact at that trial you also told the jury that there were shots fired towards you, did you not?
A. Yes, sir.
Q. And was the defendant not convicted in that case?
A. That I don't know. I believe he was.
Q. Excuse me?
A. I don't know. (Tr. 43-44)
This court has adopted the following definition of effective assistance of counsel:
"... Effective counsel has been defined to mean `not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance.'..."
State v. Seiss, 428 So.2d 444 (La.1983) at 449; State v. Ratcliff, 416 So.2d 528 (La. 1982) at 531.
A full reading of the transcript reveals that the defense attorney competently performed at trial as an advocate for the defendant. Apparently the trial strategy was to depict the defendant as a man already convicted of the same crime. In view of the straightforward testimony presented against the defendant it does not appear that these questions by the defense counsel prejudiced the defendant. The defendant has not been denied effective assistance of counsel.

Assignments of Error Numbers Four and Five
By these assignments of error the defendant questions the sufficiency of evidence used to convict him.
The defendant was convicted of attempted first degree murder in violation of R.S. 14:27(30). The elements of attempt are:
1. having a specific intent to commit a crime and
2. doing or omitting an act which is directed toward the accomplishment of the crime.
First degree murder is defined in R.S. 14:30 as follows:
A. First degree murder is the killing of a human being:
* * * * * *
(2) When the offender has a specific intent to kill or to inflict great bodily harm upon a fireman or peace officer engaged in the performance of his lawful duties;
*976 The gravamen of the crime of attempted murder is the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. State v. Jarman, 445 So.2d 1184 (La.1984). Intent need not be proven as fact, it may be inferred from the circumstances of the transaction. R.S. 15:445.
In assessing the sufficiency of evidence to support a conviction, the reviewing court must determine, whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact court could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Fuller, 414 So.2d 306 (La.1982).
There was testimony at trial by Tony Ferrand that he witnessed the defendant shooting at two people running toward the Marriott Hotel. Mr. Ferrand notified Officer Henry Meliet, who was a patron of the coffee shop, of the incident. Officer Meliet testified that he went out and saw the defendant chasing two people. When Officer Meliet noticed that the defendant had a gun in his belt, the officer identified himself as a police officer and told the defendant to drop his weapon. Officer Meliet testified further that instead the defendant pulled his gun out of his belt and fired twice at Officer Meliet. Officer Meliet stated that he returned the fire and shot the defendant in the leg. Tony Ferrand verified this testimony. Thus the evidence was sufficient to convict the accused. This assignment is without merit.

Assignments of Error Numbers Six and Seven
The defendant alleges that the entries on the bill of information and the arrest register denied him of his full name and date of birth. The defendant alleges that because he could not spell his middle name, Ervin, correctly he signed the book as Jerry Riven Butler. The defendant alleges that the police computer lists him as Jerry Joseph Buttner, born May 3, 1932. Even assuming that these facts are true, the defendant has failed to allege any prejudice which resulted from this error which would warrant reversal. This assignment is without merit.

Assignment of Error Number Eight
The defendant alleges that the State failed to turn over exculpatory evidence. The evidence consists of medical records which the defendant contends would have shown that the injury received by the defendant is inconsistent with the witnesses' testimony.
The United States Supreme Court has held that the Fourteenth Amendment mandates that the prosecution must disclose to the defense evidence favorable to the defendant if such evidence is material to his guilt or punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), the Court held that the prosecution must disclose such evidence for the impeachment of a witness whose testimony (and credibility) may be determinative of the accused's innocence or guilt. Upon receiving a specific request for such material, the prosecution must either disclose it to the defense or give it to the judge for an in camera inspection of the material. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). See also State v. Oliver, 430 So.2d 650 (La.1982); U.S. cert. den. 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983); State v. Davenport, 399 So.2d 201 (La.1981) on remand, 422 So.2d 1150 (La.1982). However, if a general request or no request is made, a conviction will be overturned only "if the omitted evidence creates a reasonable doubt that did not otherwise exist." State v. Prudholm, 446 So.2d 729, 738 (La.1984). See also State v. Smith, 437 So.2d 252 (La.1983).
In the instant case there was no request for these documents specifically, nor any general request for exculpatory material. Since the medical records would not have created a reasonable doubt that did not *977 otherwise exist, this assignment is without merit.
Conviction and sentence affirmed.
NOTES
[1] Although the cover of the bill of information states R.S. 14:27(30).